MINNIE BRINTON, by W. CHARLES PAVEY, her
Guardian ad litem, Appellant, v. WALDEMAR
VAN COTT, Administrator, Respondent.

Specific Performance.—Part Performance.—Special Ser-
vices.—Where the part performance of an oral agreement
to convey lands consists in the performance of services of
such a peculiar character that it is impossible to estimate
their value by any pecuniary standard, the contract can be
specifically performed, even though possession of the land
agreed to be conveyed was never in the vendee.

Id.—Id.—Id.—Vendor Deceased.—Where deceased orally agreed
some time before her death that if the plaintiff would come
and live with her and take care of her until her death, all
her property should belong to plaintiff at the time of her
death and plaintiff did come and fully performed her part
of the agreement and such services as plaintiff performed
were incapable of being measured by any pecuniary standard,
and deceased died seized and possessed of certain real estate;
held that a complaint, stating such facts, stated a cause of
action against deceased's administrator for the recovery of
the lands of which the deceased died seized.

BARTCH, J., dissenting.

APPEAL from a judgment upon demurrer of the district
court of the third district. The opinion states the facts,
except that so far as the abstract in the case showed,
there was no judgment to appeal from, only an order sus-
taining the demurrer.

*Messrs. Brown and Henderson,* for the appellant.

*Mr. Barlow Ferguson,* and respondent in person, for
the respondent.

MINER, J.:

Plaintiff alleges in her complaint that Lydia Davis died

at Salt Lake City, January 27, 1890, possessed of certain real and personal property situated in Salt Lake county, Utah, and so far as material to this discussion further in substance alleges: That Lydia Davis had no relations closely allied to her and now living in this country. That she was a very old woman but in good health at the time of the contract, and was living alone and had no one to look after her, care for her, cherish her, or to be cherished and loved by her; that the plaintiff had formerly been with and remained with Lydia Davis at divers times, and she was well acquainted with the plaintiff; that about the 15th of October, 1889, Lydia Davis proposed to plaintiff—who was then a young girl of sixteen years—that if she would come and live with her and take care of her until the time of her death, she would leave all her property to the plaintiff, and her property should belong to the plaintiff at the time of her death. The same proposition was made by Lydia Davis to plaintiff's parents in her behalf; that after considering the matter the said offer was accepted by the plaintiff and she went and lived with Lydia Davis on the terms of the agreement so made and accepted, became a part of her family, worked for her, lived with her and did and performed everything that a daughter could do for said Lydia Davis while she lived.

That this agreement was entirely satisfactory to Lydia Davis and to the plaintiff. That plaintiff continued to perform whatever service the said Lydia Davis desired as long as she lived; that said Lydia Davis was taken sick in the fall of 1889, and plaintiff remained with her, attended and comforted her until she died; that all of said work was done upon the faith of the fulfillment of said promise and agreement.

That plaintiff is in possession of the house where she and said Lydia Davis lived. Wherefore this plaintiff

31

prays judgment, that it may be decreed that she is entitled to the estate of said Lydia Davis, subject to the payment of other debts.  That the said Elizabeth Wilson be entitled only to the household furniture in existence at the time of the execution of the said will; and that the claim of unknown or known heirs may be quieted by the decree of this court in pursuance of the statute in such cases made and provided; and that the said Waldemar Van Cott, administrator, may be required to recognize this plaintiff as entitled to all the residue of the said estate; and for such other and further relief as may be proper in the premises.

To this complaint the defendant files his demurrer and alleges that the same does not state facts sufficient to constitute a cause of action.

The court sustained the demurrer; the plaintiff duly excepted and appeals from the order sustaining the demurrer.

In this Territory the statute of frauds is in full force. 2 C. L. § 2831.

It is therefore incumbent upon the appellant to show by her complaint that she has partly or wholly performed her contract so as to take it out of the statute of frauds.

"When the consideration of the agreement consists in work, labor and services personally done and rendered by the plaintiff, if the value of the same can be ascertained with reasonable accuracy in an action at law, and adequately compensated by the recovery of damages, then neither the services themselves nor the payment for them will avail as a part performance of the verbal agreement. But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages."

Under these circumstances, the rendition of the services is a part of the performance of a verbal agreement. The act of part performance of a verbal agreement for services must be such that it would be a fraud upon the party performing for the other party to refuse to perform his part as agreed between them. Pomeroy on Contracts, § 114.

The case of *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279 will illustrate the rule.

"A person verbally agreed to convey a tract of land to his brother, in consideration that the latter should support, nurse, and take care of him during his life time. He was subject to epileptic fits, and the brother faithfully performed the agreement on his part; nursed, maintained and took care of the invalid during the rest of his life, but did not take possession of the land or in any other way act affecting it directly. This contract was specifically enforced against the heirs of the vendor, the court holding that the services rendered by the plaintiff, or procured to be rendered were, under the circumstances, a part performance. The reasons for the decision are seen in the following extract:—'Payment of the consideration will not, in general, be deemed such a part performance as to relieve a parol contract from the operation of the statute. But the reason for this, viz., that in such case the repayment of the consideration will place the parties in the same situation in which they were before, shows that the rule applies to a moneyed consideration only. If the consideration of the contract be labor and services, those may be sometimes estimated and their value liquidated in money, so as to necessarily make the vendee whole on rescinding the contract. But in a case like this, where the services to be rendered were of such a peculiar character that it is impossible to estimate their value to the plaintiff by any pecuniary standard, and where it is evident that he did not intend to measure them by any such standard, it is

out of the power of any court, after the performance of the services to restore the plaintiff to the situation in which he was before the contract was made, or to compensate him in damages.' The principle of this case is sound, and the decision itself in strict conformity with the series of later English cases, which extend the remedy of specific performance to agreement for services. In *Davison* v. *Davison,* services of a son were held to be a good part performance of his father's verbal agreement to leave him a farm after the father's death." 2 Beasley, 246.

In *Swiss* v. *George,* 33 Mich. 253, it is held that an arrangement between a step-son just come of age and about to leave home and set up for himself, and his step-father, that if the former would stay with the latter and work the farm, and take care of the family, he should have in consideration thereof a deed to one-half the farm, which is shown by the evidence to have been a distinct and definite agreement as to the land and the consideration, and not a mere vague expectation, is sustained and specifically enforced after a substantial performance of the consideration.

In *Lowry* v. *Tew,* 3 Barb. Ch. 413, it is held that the principle upon which courts of equity hold that a part performance of a parol agreement is sufficient to take a case out of the statute of frauds, is that a party who has permitted another to perform acts on the faith of an agreement is invalid, because it was not in writing, and that he is entitled to treat those acts as if the agreement, in compliance with which they were performed, had not been made. In other words, upon the ground of fraud in refusing to execute the parol agreement after a part performance thereof by the other party, and where he cannot be placed in the same situation that he was in before such performance by him. Taking possession of such agreement, accompanied with other acts which cannot be recalled so as to place the party taking possession in the same situation that

he was in before, has always been held to take such agree-
ment out of the statute of frauds. (See 2 Story's Eq.
761, and the cases there referred to; *Keats* v. *Rector,* 1
Pike's Ark. Rep. 419.)

Part performance of a parol agreement will authorize a
court of equity to decree a specific performance of the con-
tract, on the ground that unless the agreement was carried
into complete execution it would be a fraud for the party
who had performed.

So in *Lobdell* v. *Lobdell,* 36 N. Y. 327, it is held: "A
parol agreement between father and son to the effect that
if the son would enter upon and improve the land, the
father would make him a deed of the same, and in pur-
suance thereof the son entered upon the land and improved
it; *held* not to be within the statute, and to be founded
upon sufficient consideration.

While in *Cronk* v. *Trumble,* 66 Ill. 428, in a case where
the complainant had entered into a contract with his father,
by which he agreed to support his father and mother dur-
ing their lives, pay all debts owing by the former at his
death, and pay certain specified sums to certain of his
co-heirs, in consideration of which he was then to become
the owner of the farm on which he then resided with his
father; and it appeared that at the time of the filing of
his bill for a specific performance of the contract, his
mother was still living, and might live for many years,
and that he had not paid one of the heirs the sum he
agreed to pay; *held* that, until he paid such sum and
supported his mother during her natural life, he had not
clothed himself with the right to demand a deed.

The facts pleaded in this case are admitted as true. No
question seems to be raised as to the non-fulfillment of
the contract by the plaintiff. The first question arising is,
was this contract reasonable in its terms or was it so inad-
equate and unequal as to require a court of equity to
decline to enforce it.

The agreement was distinct and certain as to what plaintiff should receive. There was no vague, uncertain, undefined expectations of benefits to be derived, but a distinct positive promise—not to make plaintiff a gift, but in consideration of certain services, to bestow upon her her entire property.

As claimed in the appellant's brief the property of deceased consisted of about $5,000 in real and personal property. At the time of the agreement it was entirely uncertain how long Lydia Davis would live, or how much care, nursing and attention she might require. She had the expectancy of living many years, during which time she might have been a helpless invalid requiring constant care, attention and nursing with such accompanying responsibility as usually attends old age and decrepitude and which is usually expected to follow in the path of declining years. So on the other hand, she might have been carried off by disease or accident within a week.

Lydia Davis was in health and owned her property; she had an undoubted right to dispose of it during her life as she saw fit to do; she knew the disadvantages of living alone; she had no relatives living in this country and no one to cherish, love and care for her in her declining years. She knew the plaintiff, probably had become attached to her during the time the previous services were rendered her. She sought her services and care as those best calculated to serve her purpose during the remainder of her life, and was to reward her by bestowing upon her all the property she had at her death; she had confidence in the honesty and integrity of the plaintiff. It seems that confidence was well bestowed. The plaintiff not only accepted the offer, but satisfactorily performed her part of the contract.

The arrangement entered into was such as was contemplated, would be beneficial to both parties, but at the time it was made it embodied an expectation of more benefit to

the deceased than to the plaintiff. It required this young girl to give up plans of future independence—home and family—and probably devote all the earlier period of her life, devotion, affection and service to this friendless old lady.

The question of mutuality and fairness of the contract must be considered in the light of all the surrounding circumstances existing at the time the contract was made. Considered in that light the benefits to be received by the deceased were a full equivalent of what she was to bestow in return for such services, care and company during her life.

It appears from the complaint that the deceased was well satisfied with the agreement she had made and that it was carried out according to her wishes.

The services rendered were of such a peculiar character that it would be exceedingly difficult and probably impossible to estimate their value to the deceased by any pecuniary standard. It is evident from the contract that the deceased did not intend to measure such services, care and company of the plaintiff by any such pecuniary standard.

The plaintiff having performed her part of the mutual agreement under the circumstances alleged in the complaint, and the deceased having derived the full benefits of such contract as was contemplated by the parties, we think a failure on the part of the defendant to perform its part would work a fraud upon the rights of the plaintiff, and that under the pleadings a specific performance should be decreed, provided such allegations are fully and clearly sustained by the proof.

The order of the court below in sustaining the demurrer should be set aside with costs, and defendant allowed to answer the complaint.

BLACKBURN, J., concurred.

BARTCH, J., dissented.