## KARREN v. RAINEY (KARREN, Intervener).

No. 1645.   Decided October 26, 1905 (83 Pac. 333).

1., GIFTS—SUFFICIENCY OF EVIDENCE.—In a suit to quiet title, evidence *held* sufficient to support a finding that plaintiff gave the premises in question to defendant and her husband as owners in common, and that in pursuance of such gift defendant and her husband went into possession of the land and made improvements.

2. SPECIFIC PERFORMANCE—PAROL GIFTS—POSSESSION AND IMPROVEMENTS.—A parol gift of land, when followed by possession and the making of valuable and permanent improvements by the donee, may be enforced in equity.

3. APPEAL—GROUNDS OF OBJECTION—STIPULATIONS IN JUDICIAL PROCEEDINGS.—Where parties to a suit to quiet title stipulate that a certain person, if present, would disclaim any interest in the land, they cannot urge on appeal that he is a necessary party, because of some interest he may in fact have in the property.

4. TENANCY IN COMMON — ACTION BY CO-TENANT. — Under Revised
   Statutes 1898, section 2919, providing that all persons holding as
   tenants in common, or as joint tenants, or any number less than
   all, may jointly or severally commence or defend any civil ac-
   tion or proceeding for the enforcement or protection of their
   rights, a tenant in common with defendant is not a necessary
   party to a suit to quiet title.

5. APPEAL—MATTERS REVIEWABLE—QUESTIONS NOT RAISED BELOW.—
   Where plaintiff and intervener, in a suit to quiet title, without
   objection joined issue with defendant both in their pleadings and
   proof, they could not complain on appeal that defendant's coun-
   terclaim included a greater quantity of land than that described
   in the complaint.

APPEAL from District Court, Cache County; J. F. Chides-
ter, Judge.

Action by Hyrum Karren against Telitha Dean Rainey.
George Karren intervened. From a judgment for defend-
ant, plaintiff and intervener appeal.

AFFIRMED.

*J. Z. Stewart, Jr., S. R. Thurman* and *Hurd & Wedg-
wood* for appellants.

*P. E. Keeler* and *F. K. Nebeker* for respondents.

APPELLANT'S POINTS.

Mere words of gift do not constitute a gift. (14 A. & E.
Enc. of Law, p. 1041; *Thompson v. Ray,* 92 Ga. 285; *Ander-
son v. Scott,* 94 Mo. 637.)

A court of equity will not enforce a parol gift of land on
account of improvements of an insignificant or temporary
character or trivial expenditures made to suit the donee's
taste or convenience. (*Burris v. Landers,* 114 Cal. 310;
*Porter v. Allen,* 54 Ga. 623; *Ogsbury v. Ogsbury,* 115 N. Y.
290; *Wack v. Sorber,* 30 Am. Dec. 269.)

The rule is that to establish these points the most satisfac-
tory evidence is required as to each. The proof must be clear,
definite, and conclusive, not only as to the fact of the gift, but
also as to acts done by the donee upon the faith of the gift,

such as would render inequitable any attempt on the part of the donor to avoid it. (*Ogsbury v. Ogsbury,* 115 N. Y. 290; *Poorman v. Kilgore* [Pa. St.], 67 Am. Dec. 425; *Schoonmaker v. Plummer,* 139 Ill. 612; *Burris v. Landers* [Cal.], 46 Pac. 162; Ponlain v. Ponlain, 76 Ga. 420.)

RESPONDENT'S POINTS.

The fact that the donee did not move upon the land for three years after the gift, and that pending such actual taking possession, the donor deeded the land to a third person, will not defeat the donation, where the donee afterward took possession and made extensive improvements. (*Whiting v. Barrett,* 7 Laws 106; *Samuelson v. Bridges,* 25 S. W. 636; *Carradine v. Carradine,* 38 Am. Rep. 324.)

Improvements equal to only one-half of the rental value of the property have been held sufficient to entitle the donee to a specific performance. (*Hubbard v. Hubbard,* 41 S. W. 749; *Poullain v. Poullain,* 4 S. E. 92.)

A severance having taken place, each takes his or her proportionate share of the property as a tenant in common, without survivorship. (*Steltz v. Shreck* [N. Y.], 28 N. E. 511; *Donegan v. Donegan* (Ala.), 15 So. 823; *Harrer v. Wallner,* 80 Ill. 197; *Lash v. Lash,* 58 Ind. 526; *Ames v. Norman,* 4 Sneed 683.)

Only a part of the purchase price was paid by Leavett and Karren. One who has not paid the full price is not a bona fide purchaser. (*Wood v. Rayburn,* 22 Pac. 521; *Dugon v. Vattier,* 25 Am. Dec. 105; *Canal Co. v. Young,* 30 Am. Dec. 212; *Bright v. Banks,* 17 Am. Dec. 136; *Donaldson v. Bank,* 18 Am. Dec. 577; *Nartz v. McPherson,* 18 Am. Dec. 216.)

A bona fide purchaser must plead and prove independently of the recitals of his deed that the purchase money was bona fide and actually paid. (*Richards v. Snyder,* 6 Pac. 186; *Boon v. Chiles,* 10 Peters 177.)

There was a prayer for general relief by respondent and under the circumstances where specific performance cannot be fully decreed, there may be an award of damages under such prayer. (*Watts v. Waddle,* 31 U. S. [6 Pet.] 389; *Cunningham v. Depew,* 1 Morris 463; *Love v. Nielson,* 54

N. C. 339; *Wilkie v. Womble,* 90 N. C. 254; *Allum v. Stock-bridge,* 67 Tenn. 356.)

The term "good and sufficient deed" relates only to the validity of the deed to pass the title which the vendor has, and does not imply that the title is valid or free from incumbrances. (*Tinney v. Ashley,* 32 Mass. 546 — 26 Am. Dec. 620; *Barrow v. Bispham,* 11 N. J. Law 110; *Brown v. Covillaud,* 566; *Louisville & N. R. Co. v. Shepard,* 28 So. 202.)

## STATEMENT OF FACTS.

Plaintiff brought this action to quiet title to forty acres of land; the same being described in his complaint as follows: The southwest quarter of the southeast quarter of section 6, township 14 north, range 1 east of the Salt Lake meridian, Cache county, Utah. Defendant denied plaintiff's title, and by her amended counterclaim alleged that on October 9, 1893, Fred Karren, a son of plaintiff, and defendant intermarried, and that on October 11, 1893, plaintiff and his wife, Martha Karren, made a marriage gift to defendant of a piece of ground, forty rods wide by one hundred and sixty rods long, containing forty acres, the same being the west half of the forty acres described in plaintiff's complaint and the west half of the northeast quarter of the southeast quarter of said section 6, the said plaintiff and Martha Karren then and there being the owners of said land; that under such marriage gift she and said Fred Karren entered into possession of said land and made improvements thereon, consisting of a dwelling house, granary, fences, and the planting of trees of the aggregate value of $1,000, and thereafter resided upon and occupied the same under claim of right; and that she was and is the owner and entitled to the possession of an undivided one-half interest in and to said land. Defendant concludes with a prayer for judgment that she "be decreed to be the owner of the said land, and that plaintiff be required to execute and deliver to her a good and sufficient conveyance for the conveying of an undivided one-half interest in said premises, and for general relief." By way of reply to this counterclaim, plaintiff admitted that on the 11th day of October, 1893, he was the owner in fee and entitled to the possession of the land described in said

counterclaim. By way of further defence, he alleged that prior to February 23, 1903, he was the owner in fee of the north half of the land described in defendant's counterclaim, and that on said date he conveyed to Edward Leavit, his son-in-law, who, in turn, conveyed the land to George Karren (plaintiff's son) ; that by the terms of said conveyances plaintiff retains a vendor's lien upon said land, subject to a mortgage of $660 executed by said George Karren and wife to the Utah Mortgage Loan Corporation, and that, aside from said vendor's lien, plaintiff has no interest in said twenty acres of land; and that the twenty acres so sold by plaintiff are the twenty acres claimed by defendant in her counterclaim not embraced within the land described in plaintiff's complaint. For a further defence to the counterclaim, plaintiff denied the alleged gift, and alleged that all improvements upon the land described in said counterclaim were placed thereon at his cost, and that defendant had no occupation or possession of said land, except as the wife of said Fred Karren, and that on the 17th day of September, 1900, a divorce was duly granted said Fred Karren, against defendant, and that by reason of said decree defendant is estopped from asserting or claiming any ownership in the property described in her counterclaim. George Karren, plaintiff's grantee, filed a petition in intervention and claimed to be the owner of the north twenty acres of the land described in the counterclaim as a purchaser in good faith for value, subject only to the mortgage of $660 in favor of said loan corporation and a vendor's lien in favor of plaintiff for $600. Defendant, by her answer to said petition, alleged the marriage gift, the making of the improvements and the occupation of the premises set forth in her counterclaim, and that intervener had knowledge of all of said facts. In the year 1900 trouble arose between defendant and her husband, and in September of the same year a decree of divorce was entered in favor of the latter. Neither alimony was allowed nor property awarded to defendant in the divorce proceedings, and no order was made therein respecting the property in controversy. On February 23, 1903, Hyrum Karren and wife conveyed by deed to Edward Leavit, who was their son-in-law, the north half of the forty acres of land in question, and on said date said Leavit and his wife conveyed by deed the land to George Karren, who mortgaged the same to the

Utah Mortgage Loan Corporation for $660, of which $600 was paid to plaintiff, Hyrum Karren. Leavit and George Karren at the time of said transfer had actual notice of defendant's claim to an undivided half interest in the property. The court decreed that neither the plaintiff nor the petitioner in intervention had any interest in the premises described in defendant's counterclaim, and that defendant was the true and lawful owner of an undivided one-half interest as tenant in common with said Fred Karren in said premises, and ordered and adjudged that plaintiff forthwith execute and deliver to the defendant a deed conveying to her an undivided one-half interest therein as tenant in common, and that she have and recover from plaintiff and intervener the sum of $600, together with her costs.

McCARTY, J., after making the foregoing statement of the case, delivered the opinion of the court.

There is a sharp and irreconcilable conflict in the evidence on all material points, and questions of fact raised by the issues. Respondent testified: That at a wedding reception given her and her husband, Fred Karren, on October 11, 1893, Hyrum Karren, plaintiff herein, came and spoke to her as follows: "Well, Litha, I didn't bring a wedding present to-night. My wedding present to you and Fred is forty acres of land in Lewiston. I gave the other two boys forty acres of land, and that will be my wedding present to you and him." That about two weeks later, and after she and her husband had moved to Lewiston, plaintiff explained to her how the land lay and where it was with reference to the location of the land he had given the other boys. Quoting her own testimony on this point she says: "He told me George's forty was next to him, and then Vess's, and then he said the forty he gave me and Fred was down on the west side of the quarter section. . . . It was always understood between Hyrum Karren and myself and husband that that was our forty down there. . . . From the time of the conversation with the plaintiff in October, 1893, up to the time trouble arose between myself and husband no person other than Fred Karren and myself claimed any interest or ownership in this land in controversy." That in 1896 plaintiff asked respondent and her husband why they did not build on the east forty of the quarter section referred to, and

they answered that they would rather build on their own forty acres that he had given them and live on their own land. That at another time (June, 1896), when he had not been feeling well, he said (quoting witness' own language): "He thought he would go to a notary public and have the deeds made out to each one of us who owned the land." That in 1896 respondent and her husband erected a dwelling house and made other improvements on the land. That respondent personally assisted in the work, carrying adobes, helped build fences, set out trees, and did the cooking for the mechanics who worked on the building, and after the house was completed she and her husband moved into it as their home. That from October, 1893, to the time difficulty arose between herself and husband, July, 1900, Hyrum Karren said nothing to her with reference to his desire to revoke the gift which he made to her in October, 1893. That the improvements placed on the land by herself and husband was of the value of $1,000. Four other witnesses testified that they were present at the wedding reception referred to, and heard Hyrum Karren make the statement respecting the marriage gift attributed to him by respondent. The carpenters who built the house and made other improvements on the land in question testified that they were paid for their work by Fred Karren, and it also appears from the record that he bought and paid for the lumber and other material used in the construction of the building. Evidence was also introduced of alleged statements made by Mrs. Karren, wife of appellant, which tended to show, and if true, did show, that she concurred and joined with her husband, Hyrum Karren, in making the gift of this land to respondent and her husband. Appellant Hyrum Karren and his wife both denied making the statements attributed to them respecting the gift of this land, and denied that they ever gave the land or intended to give it to respondent and her husband or to either of them. Appellant also testified that he paid for the improvements that were made on the land in controversy; that after the wedding reception referred to until the fall of 1899 he and his sons, including Fred Karren, worked the entire farm of one hundred and sixty acres in common, and in the fall a division was made of the products, each taking one-fourth, that he paid the taxes on the entire one hundred and sixty acres, including the land in

controversy; and that the boys, including defendant's husband, paid the taxes on the improvements, houses, etc., in which they were living. On this point respondent testified that Hyrum Karren and his three sons not only farmed the one hundred and sixty acres in common, but, in addition thereto, farmed two hundred acres of land in Trenton, and that in the fall of each year they all, Hyrum Karren and his three sons, got together, figured up the expenses, including taxes, and each one paid his proportion of the amount. Hyrum Karren further testified that in 1895 there was a family gathering at his home at which his three sons were present, and it was agreed and understood between them that appellant would transfer to each of his sons by a good and sufficient deed forty acres of his land, the deeds to be delivered to his wife, Mrs. Hyrum Karren, and kept by her until each of the boys should deposit $1,000 in the bank in favor of appellant, when each would receive his deed (this testimony was corroborated by members of his family and one other witness); that in pursuance of said agreement appellant made deeds conveying the different parcels of land to his three sons, including Fred, which were delivered to Mrs. Karren, who locked them up in her trunk; that subsequently Fred Karren, by means unknown to appellant, Hyrum Karren, or his wife, got possession of the one in which he was named as grantee, but afterwards returned the deed to appellant, Hyrum Karren, who then and there destroyed it. Respondent was not present at the family gathering, and there is absolutely no evidence in the record that even tends to show that she was advised or had any knowledge of such an event or knew of the terms upon which the deed for the land in question was to be made and delivered to her husband. Respecting her knowledge of this deed, she testified that her husband brought it home in 1899 and returned it to appellant, Hyrum Karren, in the early part of January, 1900. Therefore, according to her testimony, it was three years after the improvements referred to were made before she knew of the existence of the deed from Hyrum Karren to her husband. It will thus be seen, as hereinbefore stated, that there is a substantial conflict in the evidence on all of the material questions of fact raised by the pleadings. We have made a careful examination of the record, and are not prepared to say that the findings and decree are not amply supported by

the evidence, or that justice has not been done in this case. The judgment of the court must therefore be affirmed, unless the record discloses some error of law prejudicial to the rights of one or both of the appellants.

It is urged by appellants: That respondent and her husband did not take possession of the forty acres of land in question in pursuance of the gift, nor was their possession such as the law requires in order to vest title in the donee under a gift, and, further, that whatever right respondent may have acquired, if any, by reason of the gift and possession, was that of the inchoate right of a wife, and not an undivided one-half interest as a tenant in common. There is evidence in the record which tends to show that respondent and her husband had a conversation with appellant, Hyrum Karren, in which they, in answer to a question asked by him, stated that they preferred to build on their own forty acres that he had given them, so that they would live on their own land, and that immediately thereafter they erected a dwelling house on the land, and on July 13, 1896, moved into the house and resided there continuously until September 10, 1899, when they left temporarily for a few months only and came back again in July, 1900. That during all the time from the date of the alleged gift in October, 1893, until the commencement of this action respondent claimed an interest in the land. We think the evidence is sufficient to support the finding of the trial court that the gift was made to defendant and her husband, Fred Karren, as owners in common, and that in pursuance of such gift they went into possession of the land and made the improvements hereinbefore referred to. Therefore it necessarily follows that the decree of the court awarding respondent an undivided one-half interest in and to the premises in dispute must be upheld. (*Freeman v. Freeman,* 8 Am. Law Reg. (N. S.) 29; *Drum v. Stevens,* 94 Ind. 181; *Samuelson v. Bridges* (Tex. Civ. App.), 25 S. W. 636; *Kurtz v. Hibner,* 55 Ill. 514, 8 Am. Rep. 665; *Galbrath v. Galbrath,* 5 Kan. 411; *Lobdell v. Lobdell,* 36 N. Y. 327; *Sower's Admr. v. Weaver,* 84 Pa. 267; *Syler v. Eckhart,* 1 Bin. 378; *Smith v. Yocum,* 110 Ill. 142; *Bohanan v. Bohanan,* 96 Ill. 594.) The doctrine that a parol gift of land, when followed by a possession and the making of valuable and permanent improvements by the donee, can be en-

forced in equity is so well settled that a further citation of authorities seems unnecessary.

Appellants complain because Fred Karren was not made a party to the action. At the trial the parties to the action stipulated that Fred Karren, if present, would testify to certain facts which it is unnecessary here to enumerate. It is sufficient, however, to say that the evidence which appellants stipulated Fred Karren would give if present, would amount to, and, in fact, would be a disclaimer on his part to any right, title, or interest in the land in question. After having thus stipulated that Fred Karren, if present, would disclaim having any interest in the land, appellants cannot now be heard to say that he is a necessary party because of some interest he may in fact have in the property.

Besides, section 2919, Revised Statutes Utah, 1898, provides that

"all persons holding as tenants in common, or as joint tenants, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party. In all cases one tenant in common or joint tenant may sue his co-tenant."

It seems that under this provision of the statutes, while Fred Karren may be a proper party, yet it is not absolutely essential that he be brought in in order for the court to determine the title to the land as between respondent and appellants.

Appellants further contend that it was error for the trial court to include in its findings and decree a specific performance of the north half of the forty acres of land described in respondent's counterclaim, for the reason that this particular part of the land included in the gift was not brought in issue or even referred to in the complaint filed herein by Hyrum Karren. This contention is entirely without merit. Hyrum Karren filed an answer to defendants counterclaim in which he denied all the material allegations relied on for a recovery in said counterclaim, and the case was tried by appellants upon the theory that the entire tract of the forty acres of land was involved and properly before the court for adjudication. Having thus, without objection, joined issue with respondent both in their pleadings and proof, appellants cannot now be heard to complain that respondent's counter-

claim includes a greater quantity of land than that described in the complaint. A party cannot thus, when the court has jurisdiction of the parties to the action and the subject-matter involved, be permitted to experiment with the court in the trial of a case, and if judgment is in his favor, claim the benefits resulting therefrom, and, if adverse to him, to successfully challenge in this court for the first time the regularity of the proceedings.

Complaint is made that, under the findings and decree as they now stand, appellant, Hyrum Karren, will not only be compelled to pay the $600 awarded plaintiff in the judgment, but will be forced to pay the mortgage held by the Utah Mortgage Loan Corporation on the north half of the land in controversy. In order that there may be no uncertainty in the decree on this point, the judgment will be modified, and the appellant, Hyrum Karren, will be directed and required therein to make and deliver to respondent, as provided in said decree, a good and sufficient deed to said land, such conveyance to be subject to said mortgage.

The decree in all other respects, including judgment for the $600, is affirmed, with costs.

BARTCH, C. J., and STRAUP, J., concur.