## VAN NATTA v. HEYWOOD et al.

### No. 3502. Decided December 30, 1920. (195 Pac. 192.)

1. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO PROVE AGREEMENT TO MAKE WILL IN CONSIDERATION FOR SERVICES. In an action against an administrator to enforce intestate's agreement to make will giving estate to plaintiff in consideration of plaintiff living with and performing services for intestate; evidence *held* to prove such an agreement by the positive, clear, and convincing proof required in such cases.

2. EXECUTORS AND ADMINISTRATORS—AGREEMENT TO MAKE WILL MUST BE PROVED BY POSITIVE, CLEAR AND CONVINCING EVIDENCE. An agreement to make will in consideration for services to be performed will not be enforced subsequent to owner's death, unless the proof is positive, clear, and convincing.

3. WILLS—AGREEMENT TO MAKE WILL IN CONSIDERATION FOR SERVICES WILL BE ENFORCED BY EQUITY. Intestate's agreement to make a will and leave property to plaintiff, who, in reliance upon such agreement and as consideration therefor, continued to live with and work for intestate, will be enforced by equity.

4. FRAUDS, STATUTE · OF—PARTLY PERFORMED PAROL CONTRACT TO ·MAKE WILL HELD NOT WITHIN THE STATUTE. Where plaintiff had lived with and rendered services for intestate pursuant to intestate's parol agreement to make will leaving estate to plaintiff *held* not void under Comp. Laws 1917, §§ 5811, 5813, 5817, having been partly performed under section 5824.[1]

Appeal from District Court, Sixth District, Garfield County; *H. N. Hayes,* Judge.

Action by Joseph Van Natta against David L. Heywood, administrator of the estate of Joseph McCullough, deceased, and others. Judgment for plaintiff, and defendants appeal.

AFFIRMED.

---

[1] *Darke* v. *Smith,* 14 Utah, 35; 45 Pac. 1006; *Lynch* v. *Coviglio,* 17 Utah, 107, 53 Pac. 983; *Karren* v. *Rainey,* 30 Utah, 7, 83 Pac. 333.

*R. H. Baumunk,* of Ogden, *J. D. Skeen,* of Salt Lake City, and *Wm. F. Knox,* of Beaver City, for appellants.

*E. E. Hoffman,* of Richfield, for respondent.

CORFMAN, C. J.

Plaintiff brought this action against the defendants in the district court of Garfield county to have decreed to him the residue of the estate of Joseph McCullough, deceased, after payment of the debts of said deceased, costs and expenses of administration of the estate, and the payment of the sum of $500 to the defendant David McCullough.

In substance it is alleged in the complaint that plaintiff is more than 23 years of age; that he was left an orphan at the age of 10 years, when he was taken by Joseph McCullough and Frances McCullough, his wife, to their home at Panguitch, Garfield county, Utah, and was kept and thereafter treated by them as their own child; that they promised and agreed with him that if he would continue to live with them they would make a will and devise and bequeath to him all their estate, after administration thereof, subject only to his paying to David McCullough, a brother of the said Joseph McCullough, the sum of $500; that Frances McCullough died in 1917, leaving no estate, and at her death Joseph McCullough again promised and agreed with the plaintiff that if he would continue to live with him until he (McCullough) died he would furnish him means for support and maintenance, and that he (plaintiff) would have his estate subject to like conditions; that Joseph McCullough died in 1919; that the plaintiff accepted the offer of the said Joseph McCullough, and entered into possession of all the property of said estate, and at all times worked for the said Joseph McCullough until his death, without compensation, except when plaintiff was drafted into the United States army, during which time the said Joseph McCullough leased the property belonging to his said estate subject to the condition that the said lease should be canceled upon the discharge and return of the plaintiff

herein from the army; that upon the retirement of plaintiff from service in the army he returned to the said Joseph Mc-Cullough, and thereupon said lease was terminated, and plaintiff again went into possession of the property of said estate, and continued to possess the same and work for and remain with the said Joseph McCullough, without compensation, until the death of said McCullough in January, 1919. Both Joseph McCullough and his wife, Frances, died intestate and without issue. Plaintiff prayed that he be decreed to be entitled to all of the estate of the said Joseph McCullough, deceased, subject only to the payment of the debts of deceased, the costs and expenses of administration of said estate, and the requirement that plaintiff pay to David Mc-Cullough the sum of $500.

The defendants answered the complaint, denied the agreement set forth therein, and also the services alleged to have been rendered by plaintiff, and as a separate defense pleaded the statute of frauds (Comp. Laws Utah 1917, §§ 5811, 5813, 5817).

The district court found the issues for the plaintiff, and entered its judgment and decree in accordance with the prayer of the complaint, from which judgment and decree defendants have appealed.

Defendants assail the findings of the court on the ground of the insufficiency of the evidence, and contend that the conclusions of law, judgment, and decree are contrary to law, and are without evidence to support them. The findings are substantially the same as the allegations of the complaint.

There seems to be no dispute between the parties but that the plaintiff was taken by the McCulloughs when left an orphan at the age of 10 years, and·was kept and treated by them as their own child. However, the defendants contend that the plaintiff wholly failed to establish the agreement alleged to have been entered into between him and Joseph Mc-Cullough during his lifetime.

In support of the alleged agreement many close friends and neighbors of the deceased, Joseph McCullough, were produced at the trial, and all testified as to the affectionate re-

gard and esteem the deceased had always maintained toward the plaintiff. Mrs. Elizabeth Eickler, one of plaintiff's witnesses, testified that she had known the deceased for many years, and that she had had many converations with him regarding the disposition of the estate, during which the deceased said to her, "All was for little Joe (plaintiff)—we called him all the time—when he went, when he passed away," and "that deceased had said to her that he had told Joe Van Natta that if he stayed with him as long as he lived and worked for him everything was for him; * * * that he (Joe) had done all he could as a son for him; * * *" that "he had always been good to him, and for that reason he was going to make a will and leave him the property; * * * that he had worked for it"; and "that was the agree- he made with Joe; if he stayed with him everything was his."

Thomas Haycock, a witness produced on behalf of plaintiff, testified that he had been for many years intimately acquainted with the deceased, lived a neighbor to him, and that he had held many conversations with the deceased concerning the plaintiff, and that just a few months before the death of deceased a conversation was had, in which the deceased had stated his intention of making a will, and also that on numerous occasions the deceased had said the plaintiff was to have all his property except $500 for his brother, David McCullough, in Ireland.

Esta Lynn, another witness, testified that she had lived a close neighbor to the deceased, and that he had said to her that he was going to will his property to the plaintiff, and that he had told the plaintiff if he did the right thing he would get his property.

J. B. Showalter testified that he had been acquainted a long time with the deceased, and as to the disposition he intended to make of his estate. The witness said:

"Well, I was down in his field a few months before Joe McCullough died. I went down there to borrow his hay rake, and Jim Lloyd was there, and while he was there I asked him if he had Jim fired. He said: 'No, I rented him the place for three years until little Joe comes back, and by that time Joe will be back, and I am going to turn everything to Joe.' He said: 'All

I want out of it is enough to keep me while I live. It doesn't matter whether he pays for it or not, it will all be his when I am gone.' "

This witness also testified of the return of plaintiff and his continuing to live with deceased until his death.

S. M. Garvin, also a close friend and neighbor of deceased, testified that the lease had been made subject to the return of the plaintiff from the war, and that plaintiff was to work the farm; that the property was to go to plaintiff, and that a lawyer has been arranged with to attend to the transfer of the property to plaintiff; that deceased had told him he had promised his property to plaintiff; that "he was going to make the will to him, so that he could bind it up and see that he was made to get the property."

Henry Lynn, another witness, testified that he was a close acquaintance and friend of the deceased, and that after the plaintiff had gone to war in one of several conversations had by him with the deceased, in speaking of his property and affairs with plaintiff, deceased had stated to him that—

"I told him (plaintiff) if he stayed with me and done the right thing as long as I lived, why it was his'n."

Some half dozen other witnesses, called in plaintiff's behalf, gave testimony of like import and effect. There was practically no testimony to the contrary.

As we regard the evidence produced in behalf of plaintiff, it appears beyond doubt that the deceased not only promised and agreed with the plaintiff that, if he remained with and served the deceased until his death, his entire estate, with the exception of $500 for his brother David, would be left plaintiff by will. So, too, as we think, the testimony conclusively shows that plaintiff complied with every requirement imposed upon him by the deceased, and that both parties at all times intended that their agreement should be fully consummated. That the plaintiff died suddenly, without the formalities of any transfer or testamentary disposition of his property to the plaintiff, in the eye of the law did not alter the relationship of the parties nor their status with respect to the property involved. The record is

so replete with the testimony of the many friends and neighbors of the deceased who knew him intimately and well during his lifetime, and of his relationship and attitude toward the plaintiff, that if the courts were powerless, as a matter of equity, to carry out the intent and purposes of the deceased to fulfill his express promise and agreement with the plaintiff, so repeatedly admitted and always acted upon by the plaintiff, then indeed would they be helpless to award that which the inherent justice of a case demands. The deceased died childless. He regarded and treated the plaintiff always as affectionately as a father treats a son. He regarded him as such, and always spoke of him as "my boy." Relationships such as existed between the plaintiff and the deceased, together with matters of contract growing out of such relationships, have not infrequently been before the courts to be passed upon. As contended by defendants' counsel, this class of cases should be scrutinized with particular care; and unless under the circumstances the proof is positive, clear, and convincing, the relief sought should, and will, be denied. *Owens* v. *McNally*, 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369; 5 Pom. Eq. Juris. (2d Ed.) § 2168; *Vreeland* v. *Vreeland*, 53 N. J. Eq. 387, 32 Atl. 3. But, nevertheless, where the contract to make testamentary disposition of property is clear, definite, and free from doubt, such a contract will be, in effect, enforced; in other words, equity will decree that to be done which the parties mutually intended to be done. 5 Pom. Eq. Juris. (2d Ed.) 2168; *Wright* v. *Wright*, 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; *Bryson* v. *McShane et al.*, 48 W. Va. 26, 35 S. E. 848, 49 L. R. A. 527; *Clancy* v. *Flusky*, 187 Ill. 605, 58 N. E. 594, 52 L. R. A. 277; *Bennett* v. *Burkhalter*, 257 Ill. 572, 101 N. E. 189, 44 L. R. A. (N. S.) 733; *Worden* v. *Worden*, 96 Wash. 592, 165 Pac. 501; *Harris* v. *Morrison*, 100 Kan. 157, 163 Pac. 1062; *Monsen* v. *Monsen*, 174 Cal. 776, 162 Pac. 90; *Brinton* v. *Van Cott*, 8 Utah, 480, 33 Pac. 218.

Nor do we think that, under the undisputed facts and circumstances as shown by the record, this is a case coming within the statute of frauds (Comp. Laws Utah 1917, tit. 103,

§§ 5811, 5813, 5817), pleaded as an affirmative defense by the defendants.

The contract between the deceased and the plaintiff, although an oral oné, was taken out of the statute of frauds by reason of part performance by the plaintiff. The evidence very clearly shows that the plaintiff remained with the deceased, rendering such services unto him as he was called upon to perform under the contract up to the time of the death of the deceased, and during said time was in possession of the property by arrangement made by deceased. Section 5824, tit. 103, supra, expressly provides:

"Nothing in this title contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof." *Darke* v. *Smith,* 14 Utah, 35, 45 Pac. 1006; *Lynch* v. *Coviglio,* 17 Utah, 107, 53 Pac. 983; *Karren* v. *Rainey,* 30 Utah, 7, 83 Pac. 333; *Warren* v. *Warren,* 105 Ill. 568.

This case, as a whole, presents, under the facts and circumstances, no difficulties in carrying out the mutual understandings of the deceased and the plaintiff. We are of the opinion that the findings of the district court are amply sustained by the evidence, and that a proper decree was rendered.

It is therefore ordered that the judgment and decree of the district court be, and the same are hereby, affirmed, with costs.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.