## CLARK v. CLARK.

No. 4754.   Decided June 19, 1929.   (279 P. 502.)

*Young & Bullen,* of Logan, for appellant.

*Henry D. Moyle* and *J. M. Christensen,* both of Salt Lake City, for respondent.

FOLLAND, J.

Action for specific performance by plaintiff against the executor of his father's will on three counts. The first count alleges that, in consideration that plaintiff and his wife would come and live with the deceased, defendant's testator, and care for him the remainder of his life, pay his debts and furnish him necessary food, clothing and spending money, plaintiff might take immediate possession of deceased's land, farm same, retain the proceeds, and that the deceased would give plaintiff the farm; that plaintiff paid certain sums, and cared for deceased in reliance on the oral contract. The second count alleges similar facts, ex-

cept that testator agreed to make a will leaving plaintiff all his property. The third count presents the same facts, and alleges the reasonable value of services in caring for deceased is $25 per month, which, with the moneys paid out, plaintiff sought to recover, as alternative relief.

The trial court found against plaintiff on all three counts, but gave judgment in his favor for the amount paid by him for funeral expenses of deceased and for costs.

The principal question raised here is whether the evidence supports the finding of no oral contract either to convey or to devise to plaintiff all the property of the deceased. Most of the facts are undisputed, and, briefly stated, are as follows: Michael Joseph Clark, herein called the deceased, died in the ninety-first year of his age, April 30, 1927. At the time of his death he was living with his son, the plaintiff, upon the property in controversy, a 200-acre farm near Clarkston, Utah. The lands stood in the name of the deceased upon the county records. The deceased left surviving him three sons and one daughter. His youngest son, James Clark, is the plaintiff, and his eldest son, John P. Clark, is the defendant. About ten years prior to his death, and while admittedly of sound mentality and disposing mind, the deceased made a will by the terms of which he bequeathed to Annie Clark, the wife of plaintiff, a 60-acre tract of land upon which is located the home and other improvements of the farm in question. To the plaintiff, James Clark, he bequeathed a 40-acre tract. The balance of his farm was divided between his two sons and daughter. Plaintiff claims the contract upon which he bases this suit was made in the year 1900, immediately after the death of the deceased's wife. At that time the plaintiff, who was married and had three children, resided in a small log house on a farm in the immediate neighborhood of the deceased's farm. It was testified to by Mrs. Annie Clark that the deceased

"was at our house and he said to James Clark that if James Clark would move to M. J. Clark's home and take care of him and pay his

outstanding debts that James Clark should have all of M. J. Clark's property at the end of his death."

At this time the deceased had a house upon his farm with two rooms down stairs and two up stairs into which the plaintiff and his family moved, and there resided most of the time until the death of M. J. Clark. The plaintiff and his wife, Annie, provided a room in this house for the deceased. He was treated as one of the family, was well cared for, his debts were paid, and small sums of money advanced to him from time to time by plaintiff. The plaintiff took over the farm, planted it, harvested it, used the proceeds, paid the taxes, finished paying for certain of the acreage, made some improvements in the home, moved his own log house over as an addition to his father's house, built chicken coops, and broke new land.

The only substantial dispute in the evidence was with respect to the making of the contract to give plaintiff all of the property of the deceased, and as to the rental value of deceased's farm which was occupied and used by the plaintiff for twenty-seven years. The only witness who testified to the existence of the contract was the plaintiff's wife, Annie, whose testimony was in the language we have cited above. The plaintiff was disqualified as a witness under the statute. The sons and daughters-in-law of plaintiff and one other witness gave testimony of conversations had with the deceased at various times in the twenty years prior to his death. Statements claimed to have been made by the deceased as testified to by these witnesses are the following:

"I have given my property to your father, James Clark, my boy, I don't know whether that will ever repay them for the kind care that they have given me. That is all I have, that is the best I can do."

And, in conversation had eighteen years before his death, the deceased said:

"For the kind care that your father and mother are doing for me and taking care of me, I have given them all my property.

I have given all I own to my son that was there because his other children would not accept him. He give them all a chance to take him but they would not take him so James Clark and his wife had taken him in. He told me all the time, that is after his wife's death, how Jimmy and Annie had taken such good care of him, taken such good care of his wife, during her illness, and at the time of her death, and that he had given his property over to them, for the care and the keep of him until his death."

### And again:

"Everything I have got, my property, belongs to Jimmy and Annie. That there will be no trouble over my property because all my property has been given to James, your father, for my keep."

### And another time when there was talk of drainage needed on the farm he said:

"That is up to your father, how that is to be drained, because the property belongs to him. As you know, as I have told you before, that the property belongs to Jimmy and to you Annie. I have given all my land to your father. After I am dead, after I am under six feet of turf, perhaps you will be benefited thereby, you and your brother will be benefited by the care that has been taken of me."

### And:

"That he had paid my father and mother back for all the trouble they had been put to for him." Mother, I am an awful trouble but you know that I have given all my property that I own to Jimmy for this care that I am getting."

Another witness, related to the Clarks by marriage, testified to two conversations with the deceased, one about four or five years before his death, the other in 1912, wherein the deceased said he had made out papers and had given his son James Clark his property.

Upon the death of M. J. Clark, the plaintiff and his wife, Annie procured from a man named Stewart the will of the deceased and took it to the home of John P. Clark, the eldest son of the deceased and defendant herein. The will was opened and read in the presence of plaintiff and wife, John P. Clark and wife, and Laura Clark Griffiths and her

husband. These last four testified that upon this occasion James Clark offered to buy the land from the other heirs at its appraised valuation, but that John P. Clark stated he preferred to stay with his father's will, and that then the plaintiff said, pointing to his wife, Annie, "She will put in vouchers that will cover it all." This, however, was denied by James and Annie Clark. John P. Clark also testified that he had never been told by his brother James that the property was his, but James had told him he had talked with his father about it but had never been able to get an agreement. Laura Clark Griffiths testified that the plaintiff had never claimed to her that the property belonged to him, but had once said he had tried to buy the land from his father, but his father "cut him short."

Upon this testimony the trial court held there was no contract to either convey or to will all the land to the plaintiff, and further held that the rental value of the premises during the entire time it was occupied by plaintiff offset the services rendered by him to his father, the money paid out by him for the use of his father, and any improvements made by plaintiff on the place. The evidence was undisputed that the plaintiff had paid funeral expenses of the deceased, and for this the court gave him judgment, and for costs.

This is an action in equity, in which it becomes our duty to determine questions of fact as well as questions of law, but, unless the evidence clearly preponderates against the findings and judgment made by the district court, its decision must stand. *Singleton* v. *Kelly*, 61 Utah 277, 212 P. 63.

The plaintiff, in declaring specific performance of an oral contract must establish the terms thereof with a greater degree of certainty than is required in an action at law, and he must show a clear mutual understanding and a positive agreement of both parties to the terms of the contract. *Price* v. *Lloyd*, 31 Utah 86, 86 P. 767, 8 L. R. A. (N. S.) 870; *Montgomery* v. *Berrett*, 40

Utah 385, 121 P. 569; *Van Natta* v. *Heywood*, 57 Utah 376, 195 P. 192.; *Trenchard* v. *Reay* (Utah) 257 P. 1046. The rules which must guide a court in weighing evidence in cases of this kind are well stated in 36 Cyc. "Specific Performance," pp. 691, 692:

"The requisite of clear, conclusive and unequivocal evidence is especially important in the case of a parol gift of land, since the fact that the parties are usually relatives tends to account for plaintiff's occupation of the land as permissive, not as the result of contract. The proof must indicate more than a vague intention to give,, or a family arrangement resting upon the will of the parties."

"The rules as to the weight of evidence are applied with the utmost strictness to oral contracts to devise the whole or part of an estate. Such contracts are viewed with suspicion by the courts, and must be established by the clearest and most convincing evidence. In these, as in other contracts, one party to which is deceased, the defendant heirs or devisees are under the disadvantage that they are deprived by his death of their most important testimony. In such contracts the proof, in addition to inferences from the situation, circumstances, and relations of the parties, must generally consist of evidence of verbal declarations made by the deceased to third persons. This is a kind of evidence which the law recognizes as weak and unsatisfactory, and to be scrutinized with care. Vague admissions, mere declarations of an intention to confer a benefit, loose and unconnected statements made to different persons at various times in chance conversations, do not, unless well corroborated, furnish proof of such a character as will warrant specific performance of an oral contract or gift."

We have made a careful examination of all the evidence and are unable to say, when guided by the rules herein referred to, that the evidence preponderates against the findings of the district court. We think the findings well supported by the evidence. There is much evidence to the effect that the deceased, M. J. Clark, felt kindly disposed towards and obligated to his son James and ■ daughter-in-law Annie for their kind care and attention to him, and that he made statements that he had given the property to them to repay their kindness. These statements, however, may logically be referable to the giving

to them the use of the farm during his entire life. Not only did they have the use and benefit of the farm as such, but they had the home wherein the family was reared. In addition to this, he provided in his will more bounteously for his son James and daughter-in-law Annie than for his other sons and daughter. *Rodman* v. *Rodman*, 112 Wis. 378, 88 N. W. 218. May it not be said that the conduct of plaintiff in opening the will and carrying it to the named executor, his failure to protest the probating of it, and later filing claims against the estate, and offering to buy the interests of the other heirs, and never, at any time, making any claim to the other heirs that he was the exclusive owner of the farm, he thereby ratified the will? *Laird* v. *Laird*, 115 Mich. 352, 73 N. W. 382; *Shaw* v. *Schoonover*, 130 Ill. 448, 22 N. E. 589. All this evidence might well weigh against plaintiff's claim of a contract having been actually made.

The fact that deceased made a will some ten years prior to his death is some evidence of his version of any promise or agreement made with respect to the disposition of his property. In view of all the circumstances, it clearly indicates that there was no meeting of minds as to the stated terms of a contract to convey all the property to his youngest son. The will as made is clearly in harmony with the declared intention of deceased to reward, not only his son James, but his daughter-in-law Annie, for the kind treatment given him by them. The will, by its terms, bequeathed to Annie Clark the largest and most valuable portion of the estate. This is entirely consistent with his many expressions of appreciation of her services, whereas a conveyance or a will which excluded her would not be in harmony with such declarations. If plaintiff should prevail in this action, Annie Clark would be cut out entirely from direct participation in the estate. It has been held that the making and delivering of a will, taken in consideration with other testimony, was sufficient to show that deceased had entered into a contract for the making of such a will.

*Naylor* v. *Shelton*, 102 Ark. 30, 143 S. W. 117, Ann. Cas. 1914A, page 394. There is nothing in this record to indicate any change of mind on the part of the deceased. He at no time had any dispute with plaintiff or his wife. He was well cared for and seemed always to be appreciative. It may be unfortunate for plaintiff that the bounty of the father was not equal to the expectation of the son. It is apparent, however, that the father attempted to do justice as he saw it to all his children and also to the daughter-in-law who had given him so much care and attention.

The fact that none of the children of Clark except his son James, all of whom lived near and visited with him, were informed of any contract such as claimed by the plaintiff, and also that it was never reduced to writing and no steps ever taken either by the deceased or plaintiff to have its terms definitely fixed, casts suspicion upon plaintiff's claim to all his father's property. *Lay* v. *Lay*, 75 Ark. 526, 87 S. W. 1026.

We cannot reverse the judgment of the district court where such reversal would, in effect, nullify the undoubted will of the deceased, a will duly executed and admitted to probate without objection, a will showing the gratitude of the deceased for services rendered by his son James and his daughter-in-law Annie, because of a conversation alleged to have taken place between the deceased, his son James and daughter-in-law Annie 27 years ago. *Cross* v. *Cleary*, 29 Ont. Rep. 542; 44 L. R. A. (N. S.) 744.

Appellant refers us to the cases of *Brinton* v. *Van Cott*, 8 Utah 480, 33 P. 218, and *Van Natta* v. *Heywood*, 57 Utah 376, 195 P. 192. Both of these cases, however, are distinguishable from the case at bar. In both cases the contract was clearly made out by the evidence and in each the dereaced died intestate. There was no evidence either by will or by expressions of the deceased contrary to the alleged contract, and in both cases all the other requirements for taking a parol contract out of the operation of the statute of frauds were fully met. The instant case is rather con-

trolled by *Price* v. *Lloyd,* supra. While it is true improvements were made upon the farm, yet we think these are shown to have been more for the convenience of the plaintiff in his use of the premises than they were for the permanent advantage of the freehold, notwithstanding the trial court found as a fact that these improvements were of benefit to the freehold.

There was dispute with regard to the rental value of the premises, and certainly the evidence on this subject is not very satisfactory. However, in the state of the record we cannot see how either party can complain, because neither took the trouble to fully enlighten the court as to the amount of crops produced, the value thereof, or the rental value of the home and the farm. In view that the case was submitted for decision upon the record as made, we find no error in the finding of the court that the value of the use of the premises offset the amounts found to be paid by the plaintiff for the benefit of the land or the deceased.

We conclude that the result reached by the trial court was right.

JUDGMENT IS AFFIRMED.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.