ALLIE BENNETT, Appellant, *vs.* ANNA E. BURKHALTER,
Appellee.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. SPECIFIC PERFORMANCE—*specific performance is not a matter
of right.* A party cannot demand specific performance of a con-
tract as a matter of absolute right, but the exercise of such power
rests in the sound discretion of the court in view of all the sur-
rounding circumstances.

2. SAME—*complainant must prove performance or a willingness
to perform.* Before a complainant is entitled to specific perform-
ance she must prove that the contract has been fully performed on
her part or that she has always been ready and willing to perform
her agreements.

3. SAME—*when complainant is not entitled to specific perform-
ance.* Complainant in a bill to require the defendant, as assignee
and grantee of complainants' former employer, to specifically per-
form a contract between complainant and such employer to leave
his estate to her if she would become a member of and remain in
his family and perform such services as were required, is not en-
titled to a decree where her own testimony shows that more than
twenty years after she had left her employer's home, during which
period she had moved away and married, she refused to return to
his home unless he would allow her husband to come with her.

APPEAL from the Circuit Court of Knox county; the
Hon. GEORGE W. THOMPSON, Judge, presiding.

DAN R. SHEEN, and R. D. ROBINSON, for appellant.

WILLIAMS, LAWRENCE, WELSH & GREEN, and F. O.
McFARLAND, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The appellant, Allie Bennett, filed her bill in the circuit
court of Knox county against Anna E. Burkhalter, appel-
lee, the grantee and assignee of Jonathan C. Garwood, for
the specific performance of a contract alleged to have been
entered into between appellant and said Garwood. Upon

final hearing her bill was dismissed for want of equity, and from that decree this appeal has been perfected.

The material facts disclosed by the record are as follows: In 1864 Jonathan C. Garwood resided in the State of Michigan with his family, consisting of himself, his wife and two daughters, Mattie and Manie, aged, respectively, three and four years. These two children were congenital deaf mutes. At that time appellant, who was then Allie Shepard and was about eighteen years of age, resided near the Garwoods and was a frequent visitor in their home. The two children having become attached to her, Garwood proposed that she enter their home, become a member of their family and take charge of the children. An oral contract was entered into, whereby it was agreed that the appellant should become a member of the Garwood family, should care for the two children during their lifetime and render such other services as might be required in and about the family, including the assistance of Garwood in his business affairs, in consideration for which Garwood agreed that at his death he would leave her, by will, an equal share with his wife and children of all the property of which he might die seized, he being at that time a man of considerable wealth. The appellant entered the home of Garwood upon this condition and assumed the duties to be performed by her. In 1865 Garwood removed with his family to Galesburg, Knox county, Illinois, and appellant accompanied him as a member of his family. The daughter Mattie died when six years of age, and Garwood thereafter agreed with appellant that under the terms of their contract he would devise and bequeath his property equally to his wife, his daughter and appellant. The appellant remained in the Garwood family under this arrangement until 1879, and, so far as appears from the record, performed all the duties she had agreed to perform up until that time. During that year she left the Garwood home. The reason for her leaving and the circumstances under which she left

are in dispute here. The evidence on the part of appellant tends to prove that Garwood, being an infidel, objected to appellant attending the services of the Christian church of Galesburg, of which she was a member, and gave her the option of severing her connection with the church or leaving his home, while, on the other hand, it is contended on the part of appellee,—and the competent proof in the record slightly tends to support the contention,—that Garwood objected to the attentions being shown appellant by Rev. E. P. C. Bennett, the pastor of the Christian church and a married man. It was shown in this proceeding that at the time Rev. Bennett knew the appellant in Galesburg he was married but, was posing as a single man, but there is no competent proof in the record showing the extent of Garwood's knowledge of this situation. There is considerable incompetent hearsay evidence in the record on this question, but it appears from competent evidence introduced on the part of appellant that it was known to Garwood that the relations between appellant and Rev. Bennett were different than the ordinary relations between a pastor and a member of his church. After appellant left the Garwood home Garwood secured various persons at different times to care for his daughter. The evidence shows that owing to the disposition and physical ailments of the daughter the task of caring for her was an extremely arduous and unpleasant one. In October, 1901, Garwood procured the services of appellee to take care of his daughter, Manie, and she remained there some time at a weekly wage. Thereafter Garwood entered into a contract with appellee similar to that which he had made previously with appellant, whereby appellee agreed to remain unmarried and to take care of the daughter during her lifetime. Garwood was then quite an old man and it was reasonably to be expected that the daughter would survive him. By this contract with appellee she was to receive, as a consideration for her services, the whole of Garwood's estate, real and personal, the

wife having previously died, in the year 1897. Thereafter, and during his lifetime, pursuant to his contract with her, Garwood conveyed and assigned to appellee all his real and personal property, amounting in value to something more than $125,000. Manie Garwood died on May 5, 1904, and Jonathan C. Garwood died on February 17, 1907, appellee remaining with him as a member of his family until the time of his death.

The prayer of the bill was that the appellee be required to disclose the description of all the property she received from Garwood and the consideration paid therefor; that the court ascertain the value of the property so received by appellee over and above any valuable consideration paid therefor, and that appellant be decreed, under her oral contract with Garwood, to be entitled to an undivided one-third share in the estate of which Garwood would have died seized but for the conveyance and assignments made by him to appellee.

It is urged by appellee that the decree of the court was proper upon the ground that the property of Garwood was conveyed and assigned to her for a valuable consideration, as a *bona fide* purchaser, without notice of any equitable claims of the appellant; but in the view we take of the case the decree should be sustained on other grounds, and it will therefore be unnecessary to consider or discuss this question.

It is a well established rule that a party cannot demand the specific performance of a contract as a matter of right, but that the exercise of this power rests in the sound discretion of the court in view of all the surrounding circumstances. Before she was entitled to this remedy appellant was required to show that she had always been ready, willing and eager to perform on her part, (*Hoyt* v. *Tuxbury*, 70 Ill. 331; *Morse* v. *Seibold*, 147 id. 318; *Forthman* v. *Deters*, 206 id. 159;) or that the contract had been fully performed, and the burden was upon her to show one or

the other of these facts. After leaving the Garwood home appellant secured employment in a deaf and dumb asylum in the city of Jacksonville, Illinois. Rev. Bennett remained a short time in Galesburg after the departure of appellant and then accepted a pastorate in Morgan county. In 1881, and apparently while a resident of Morgan county, he secured a divorce in Cook county from his wife, who was then insane and an inmate of an asylum in Mendota, Wisconsin. In January, 1882, Bennett and the appellant were married. In September of the same year the appellant, in company with her husband, went to Australia, where they remained for a period of three and one-half years. Afterwards, upon their return to the United States and prior to the filing of the bill herein, they resided at various times in the States of Iowa, Missouri, Kansas, Montana and Indiana. It might be seriously questioned whether appellant, as she contends, during all the time of her residence in Australia and in the various States of the Union, held herself in readiness at any time to resume her relations as a member of the Garwood family and perform her contract in the event that Garwood should be willing to have her return. Whatever doubt may be entertained on this question is dissipated, however, by the statement and conduct of appellant in an interview had with Garwood in his home on January 1, 1902. Appellant was a witness in her own behalf. Her competency to testify is questioned, but we have not deemed it necessary to discuss that question. She testified that at the time of her visit to the Garwood home, on January 1, 1902, appellee was then a member of the Garwood family and was taking care of the daughter. She says that Garwood informed her that appellee would not remain longer than the first of April; that she couldn't talk with Manie and he did not think she would suit at all, and "wanted to know if I would come back; I said, all right if my husband could come with me, and he said he wouldn't have that preacher around." In the light of this

request and the response thereto, the circumstances under which appellant left the Garwood home in 1879 become immaterial. This was virtually an offer on the part of Garwood to her to return, and she could not preserve her rights under her original contract with Garwood by offering to return under the condition she named. Garwood was under no obligation to take the husband of appellant into his family as a part of the contract upon which appellant relies, and when he refused to allow appellant to return upon that condition it does not appear that she made any response or that she was willing to return under any other condition.

It is argued that by this statement the appellant did not mean that she would return if her husband would be allowed to come into the Garwood home, but simply that she was willing to return if he be allowed to come to the city of Galesburg and she be given the privilege of seeing him occasionally. We do not think this conversation with Garwood, as detailed by appellant herself, is susceptible of this construction. She says that in connection with his statement that appellee was not proving satisfactory and would not remain after the first of April he asked her if she would come back. This question is susceptible of but one meaning, and that is, whether she would return to the Garwood home and resume her place there as a member of his family, and when the appellant responded that it would be all right if her husband could come with her, she undoubtedly meant, and Garwood could have only understood, that she would return on the sole condition that her husband should be allowed to reside with her in the Garwood family. The further examination of appellant on this subject did not change the effect of this statement to Garwood, or afford any excuse for giving it any other construction or attributing to it any other meaning than the words used plainly imply. By imposing this condition and by making no further offer after it was rejected by Garwood appellant declined to further perform her part of the contract, and she

257 — 37

cannot now be heard to say that she was ever ready, willing and eager to perform on her part. By her own conduct she repudiated and rescinded the contract, and the court properly dismissed her bill for want of equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*