COLTEAUX, et al, Appellants, v. PELTON, et al, Respondents.

(227 N. W. 566.)

(File No. 6773.   Opinion filed November 26, 1929.)

*Frank W. Mitchell* and *P. A. Zollman,* both of Mitchell, for Appellants.

*H. G. Giddings,* of Mitchell, for Respondents.

BROWN, J.   Action to determine adverse claims to 40 acres of land in Davison county, which was owned by George Coan in his lifetime.   Plaintiff John Colteaux is administrator of the estate of George Coan, and plaintiff Albert Coan is a son and one of the heirs of said George Coan.   Defendant Mrs. S. M. Pelton in her answer claims title under two tax deeds and also under an oral agreement between her and George Coan made just prior to her purchase of the tax certificate, whereby, in consideration of indebtedness which she claims he owed her for personal service and for provisions furnished to him, and in further consideration that she should continue such personal service and furnish him provisions as long as he should live, he orally sold and conveyed the premises to her, and for record evidence of her title, he agreed not to redeem from the tax sale, and that pursuant to this agreement he surrendered possession to her, and that she had in all respects performed the oral contract on her part, and she prays judgment quieting title to the premises in her.   She now abandons all claims under the tax deeds, and concedes them to be void, and relies solely upon the oral contract alleged, and full performance thereof on her part.   It is conceded that before commencing the action plaintiff tendered and offered to pay the full amount necessary to redeem from the tax sale and payment of subsequent taxes.   The evidence of the oral agreement is the testimony of her husband, who says that shortly before she purchased the tax certificate from the county, Coan came to their place and said: "His place had been sold for taxes and he had no money and Fred and Albert (two of his sons) wouldn't pay them and he didn't know what he would do and she told him she would see, maybe she could pay them taxes, and he told her if she would pay them taxes, and the boys wouldn't, when he was through with it she could have the

place. * * * There was nothing said in the conversation about his washing and getting his provisions." N. A. Bush testified that, before the notice to take tax deed was served Coan told him "that the boys wouldn't pay up the taxes and if anybody got the land he would like to see Mrs. Pelton get it than anybody else." James Pelton testified that Coan told him "that he couldn't pay the taxes himself nor the boys couldn't pay for them and if she would pay the taxes, he said that she had promised him he could live on the land as long as he lived and have the use of it and that when he was through with it he wanted her, by paying the taxes, to have the land." Fred Clark testified that Coan told him "he had promised Peltons the property if they would keep up the taxes and look after him a little. He said he was to have the property as long as he lived." Charles Annis testified that Coan talked to him about Mrs. Pelton paying the taxes, and he was to live there as long as he lived, and she was to have the land when he died.

Plaintiff contends that for some years prior to the time of this alleged agreement and down to the end of his life, Coan was unsound of mind and incompetent to enter into any contract; but we deem it unnecessary to express any opinion on this point, because we think that conceding his competency the evidence fails to show that any such contract as Mrs. Pelton relies on was ever entered into or that she has performed the terms of the contract that she alleges. Instead of a present contract of purchase and sale, all of the testimony tends to show, at most, an intention on Coan's part to leave the property to her at his death. The contract alleged in Mrs. Pelton's answer is that he orally sold the real estate to her in consideration of several hundred dollars due her from him for past services rendered to him, and provisions furnished to him, and her agreement to continue such services and furnish him with provisions as long as he lived; but the evidence fails to show that she canceled such indebtedness or continued to either render him the personal service or furnish him the provisions while he lived. She procured the assignment of the tax sales certificate on March 4, 1922, and got the first tax deed thereon on May 2, 1924. On account of defective proceedings she procured another tax deed under the same sale on November 9, 1926. Coan was taken to a hospital in Mitchell in June, 1924. A month or six weeks later, the exact date does not appear, he was adjudged to be

insane and committed to the hospital for the insane at Yankton, where he continued as an insane patient until his death on March 1, 1926, when he was about 80 years of age. The Peltons contributed nothing for his support or expenses in the Mitchell hospital, where he was kept as a county charge, nor did they pay anything towards his keep at the hospital for the insane.

In her answer Mrs. Pelton alleges that she went into possession of the premises on or about May 1, 1925, and her husband testifies that he took possession of the farm as though he owned it in 1925. This was more than three years after the alleged oral contract, and it was eight or nine months after Coan was adjudged insane and committed to the hospital for the insane at Yankton. In Steensland v. Noel, 28 S. D. 522, 134 N. W. 207, 211, it is said that possession, to constitute part performance of an oral contract for sale of real estate, "must be taken with the consent of the vendor, actual or implied, since, in the absence of such consent, there can be no estoppel against defendant or fraud upon plaintiff, which is said to be the foundation of the doctrine of part performance. 36 Cyc. 666, and cases there cited."

Since at the time Mrs. Pelton took possession Coan was, and for some months prior thereto had been, a patient in the hospital for the insane at Yankton pursuant to an adjudication of his insanity, such possession could not be with his consent either express or implied, and therefore the possession of the premises taken by Mrs. Pelton could not be considered as part performance of the oral contract. In 25 R. C. L. 588, it is said to warrant the specific performance of an alleged oral agreement to devise lands, the courts require that the agreement be clearly and satisfactorily proven so as to leave no doubt as to its terms and character, and "that the weight of authority holds that if the support to be furnished or services to be rendered are of such a character as to be capable of an approximately accurate estimate, and the value liquidated in money, so that the promisee may be made substantially whole, it is insufficient" to take the case out of the operation of the statute of frauds. See also Faunce v. Woods, 55 App. D. C. 330, 5 F.(2d) 753, 40 A. L. R. 208; Bennett v. Burkhalter, 257 Ill. 572, 101 N. E. 189, 44 L. R. A. (N. S.) 733. Even if it be conceded that the contract alleged by Mrs. Pelton is proved, yet the part performance of it upon which she relies to take the case out

of the statute of frauds is such as can be readily measured in money, and the possession taken by her is not such as can be referable to the contract.

The judgment and order denying a new trial are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.