## MAXFIELD et al. v. SAINSBURY et al.

No. 6897. Decided August 21, 1946. (172 P. 2d 122.)

See 70 C. J., Witnesses, sec. 320; 28 R. C. L. 504. Dead Man's statute —adverse interest, notes, 2 A. L. R. 1485, 88 A. L. R. 248.

*McCullough & Ashton,* of Salt Lake City, for appellant.

*W. D. Beatie,* of Salt Lake City, for respondent.

LARSON, Chief Justice.

This is an appeal from a decree by the District Court of Salt Lake County ordering specific performance of a real estate contract.

On the 11th day of August 1935, Charles Evans, deceased, entered into an agreement with the respondents, E. R. Maxfield and Lavera B. Maxfield, hereinafter called the purchasers, for the sale of property, farm implements, tools and water stock. The consideration for the sale was $5,000 and the maintenance, support and medical care of the deceased throughout his life. The terms for payment of the $5,000 were as follows: $15 on the first day of September, 1935, and $15 payable the first day of each month thereafter with the exception of the months of December when the purchasers were to pay $160. This method of payment was to remain in effect until the entire purchase price was paid. It was further agreed that the purchasers could make larger payments or pay the entire amount if they desired. Immediately upon execution of the agreement the deceased signed written instructions to the purchasers to make all payments to his son, Evan George Evans. Four days later, August 15, 1935, the deceased and the purchasers entered into an escrow agreement whereby the irrigation stock was placed in the Sandy Bank with instructions to deliver said stock to the purchasers upon payment of the consideration named in the agreement. Two additional instruments were executed on August 15, 1935, the first one being the granting to Evan George Evans power of attorney with all right and power to manage and control the deceased's real and personal property. The second, which is the cause of this law suit, is the following receipt alleged to have been issued to the purchasers by the deceased:

"August 15, 1935

"Receipt is hereby acknowledged for the sum of ($3000.00) Three Thousand Dollars from E. R. Maxfield & Lavera B. Maxfield to apply on contract dated August 11, 1935, to purchase 16 acres of land as described in contract and is situated in So. ½ of So. E¼ of section 30, Salt Lake County, Utah.

"The acknowledgment was received as follows one dollar in cash, canal water stock returned, tools and delivered & other valuable consideration.

"/s/ Charles Evans"

During the years 1934, 1935, 1936 and 1937, the purchasers failed to pay the yearly December installments of $160 as provided by the terms of the agreement. Evan George Evans at the purchasers' request deferred payment of all sums which became delinquent to the end of the agreement. In 1940 the purchasers again were delinquent, and on March 30th Evan George Evans waived all past defaults.

The seller, Charles Evans, died testate on the 26th day of December, 1943. Evan George Evans became executor of his will. On February 23, 1944, the purchasers commenced this action against the executor and all persons who would take the estate under the will or the laws of succession, for specific performance of the contract of purchase and sale, to compel the execution and delivery to the purchasers of a deed of conveyance of the land. The defendant in the suit hereinafter called the executor, resisted the action on the ground that there was still $3,000 unpaid and untendered on the sale price. The only substantial dispute in the evidence is the validity of the $3,000 receipt which poses the principal issue in this suit.

Is the $3,000 receipt a valid one?

The purchasers called the following witnesses to substantiate the validity of this receipt: Reed R. Maxfield, P. W. Schlotz, Jessie Kemp, Robert B. Maxfield, William Cloris Keysor and Sarah Keysor Kemp. Objection was made to the testimony of Sarah Keysor Kemp on the ground she was incompetent as a witness under the provision of Sec. 104-49-2, U. C. A. 1943, commonly called the "dead man statute." It was stipulated that Sarah Keysor Kemp is the granddaughter of Charles Evans, the deceased, and was named in the will of the deceased as a legatee and was to receive one-fifth of the one-ninth interest of her mother, Florence M. Evans Keysor, the deceased daughter of Charles

Evans. She was named as one of the defendants in the complaint filed in this action. Over the objections of the executor that this witness was disqualified to testify by reason of Sec. 104-49-2, U. C. A. 1943, the court permitted her to testify and relate conversations with her deceased grandfather, Charles Evans.

This gives rise to the principal legal question of this case: Is this witness disqualified under subdivision (3) of Section 104-49-2, which reads as follows:

"The following persons cannot be witnesses:

\* \* \* \* \* \*

"(3) A party to any civil action, suit or proceeding, and any person directly interested in the event thereof, and any person from, through or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues, or defends, as guardian of an insane or incompetent person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian, assignee or grantee, directly or remotely, of such heir, legatee or devisee, as to any statement by, or transaction with, such deceased, insane or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent or deceased person, unless such witness is called to testify thereto by such adverse party so claiming or opposing, suing or defending, in such action, suit or proceeding."

For the purpose of clarification we shall eliminate the parts of the statute which do not have a bearing on our question. It then reads:

"The following persons cannot be witnesses:

\* \* \* \* \* \*

"(3) A party to any civil action \* \* \* and any person directly interested in the event thereof \* \* \* when the adverse party in such action \* \* \* claims or opposes, sues or defends \* \* \* as the executor \* \* \* of any deceased person, \* \* \* as to any statement by \* \* \* such deceased \* \* \* person \* \* \* which must have been equally within the knowledge of both the witness and such \* \* \* deceased person unless \* \* \* called to testify thereto by [the executor]."

This section of the statute has been before this court a number of times, and similar sections have been before a number of courts. The cases, like the language of the statute, are not entirely free from confusion. The confusion vanishes when a careful analysis is made of the intent and purpose of the statute. The purpose of the statute is to guard against the temptation to give false testimony in regard to a transaction with a deceased person by the surviving party, when the transaction is involved in a lawsuit and death has sealed the mouth of the other party. Furthermore, the statute seeks to put the two parties upon terms of equality in regard to giving evidence of the transaction. 3 Jones Ev. 790; *Miller* v. *Livingstone,* 31 Utah 415, 88 P. 338. It was never intended that this section should be used for the purpose of suppressing the truth. On the contrary, the statute's sole purpose is to prevent the proving by false testimony of claims against the estate of a deceased person. With this intent and purpose in mind we will now apply the statute to the facts of this case. The statute involved has an awkward construction, because it is merely a subdivision of a section enumerating who may not be witnesses, and therefore each subdivision begins by naming a party who cannot be a witness and then attempts to state the qualifying conditions. Let us restate or paraphrase subdivision (3) to express the same thought without attempting to make it fit in the "form mould" of the rest of the section. The thought would then be expressed thus:

When an executor, etc., sues or defends in an action to protect or recover assets of the estate, neither the other party to the action, nor the person through whom he claims or deraigns his title, nor any other person having a direct interest in the claim of the party opposing the executor, etc., that is, an interest in the cause of action, adverse to the claims of the executor, can testify as to any transaction had with the deceased, which is involved in the lawsuit, nor as to any statement made by the deceased relative to the transactions, matters and claims involved in the lawsuit, unless such person is called to so testify by the executor, etc.

This section makes incompetent: (1) A witness who is a party to the action; (2) a person directly interested in the event of the instant suit; when the adverse party claims, opposes, sues or defends as the executor, administrator, guardian, heir, legatee or devisee. It follows ■ the executor is the adverse party to this action. A glance at the caption reveals that Sara Keysor Kemp is joined as a party defendant with the executor Evan George Evans. Does this fact make her a party to the action and thereby disqualify her from testifying? The prohibition of this statute, by its express wording, is limited to parties whether plaintiff or defendant, who are opposing or suing the executor in the immediate action, that is to those who are the parties in the suit adverse to the executor. Sarah Keysor Kemp is not opposing or suing the executor but, on the contrary, is defending with him; she is not an adverse party to him, nor is he an adverse party to her. Her interest in the suit is favorable and identical with that of the executor. To extend this statutory disqualification to include a party not suing or opposing the executor and particularly to one whose position in the action is favorable and identical with that of the executor would be to totally disregard the wording of the statute and its past application by this court. *Mower* v. *Mower*, 64 Utah 260, 228 P. 911; *Miller* v. *Livingstone*, 31 Utah 415, 88 P. 338; *Clark* v. *Clark*, 74 Utah 290, 279 P. 502. She is not incompetent on the ground that she is a party.

Sarah Keysor Kemp is an heir of the deceased and should the executor prevail she will inherit a one-fifth of a one-ninth interest in the property in issue. Does this interest disqualify her as a person interested in the event of the suit? The executor insists that a person directly in- ■■ terested in the even of the suit is disqualified and it makes no difference whether that interest is in the cause of action or in the estate. We reject this contention. The statute extends this disqualification to the witness and not to the testimony. *Grieve* v. *Howard*, 54 Utah 225, 180 P. 423. The court does not permit the witness to testify before determining the admissibility of the evidence. The witness

and his interests are considered, if timely objection is made, at the time the witness takes the stand. If the witness is opposing or suing the executor or, if the witness has a direct interest in the event of the suit the prohibition of the statute applies. To hold contra would result in the disqualification of every person who has had conversation with the deceased and who might derive some benefit from the estate, either as an heir, devisee, legatee, creditor or cestui que trust. If the legislature had intended interest in the estate was to disqualify they would have simply said:

"In any suit where the executor is a party thereto all persons interested in the estate are disqualified from testifying as to conversation with the deceased."

Such a construction was not intended and to so hold would be to disregard the term "adverse party." We think the legislature intended by the term "adverse party" to disqualify only those witnesses who have a direct interest in the event of that particular action adverse to the interests of the estate. See *Mower* v. *Mower,* 64 Utah 260, 228 P. 911, where this court dealt with a situation similar to that presented here in this respect: If the deed, which was the subject matter in that suit, was found to be valid the heirs received nothing. The heirs were called by the defendant who was opposing the administrator. The court held that the express terms of the statute did not exclude these witnesses for they were not interested parties as set forth in the statute; their interest was in the estate, and not in the claim urged against it.

Other Utah cases which hold that the disqualification extends only to those suing or opposing the executor or administrator and to witnesses whose interests are in the claim urged against the estate are: *Miller* v. *Livingstone,* 31 Utah 415, 88 P. 338; *Staats* v. *Staats,* 63 Utah 470, 226 P. 677; *Clark* v. *Clark,* supra. In the Livingstone case the daughters of the testator were called by the plaintiff; defendants interposed the dead man statute. The court in reversing the holding held [31 Utah 415, 88 P. 344]:

"The purpose of these statutes is to guard against the temptation to give false testimony. * * * The statute in this regard is intended to protect the estates of deceased persons from assaults, 'and relates to proceedings wherein the decision sought by the party so testifying would tend to reduce or impair the estate, and does not relate to the relative rights of the heirs or devisees as to the distribution of an estate in a proceeding by which the estate itself is in no event to be reduced or impaired."

In other words, the interest of the witness must be in the claim urged adversely to the estate. In *Staats* v. *Staats*, supra [63 Utah 470, 226 P. 680], the testator's son, who was also the surviving partner, sued his mother and intervening brothers. This court in permitting the plaintiff and other heirs to testify concerning transactions with the deceased said:

"In view, therefore, that she is here claiming in her own right, the other heirs are competent witnesses. * * * That the statute has no application where the controversy arises between or among the heirs and merely involves questions relating to their respective rights as such, and, where there is no assault upon the estate."

The converse of the above cases is *Clark* v. *Clark*, supra, in which the prohibition of the statute was applied against plaintiff who was adverse as a party and adverse in interest. Plaintiff was the son of the deceased. He was suing the estate and his older brother, who was the executor, for specific performance of a contract for the purchase of a house and lot which he claimed his deceased father contracted to convey to him in return for taking care of the deceased and his wife. The plaintiff was properly disqualified.

*Rasmussen* v. *Sevier Valley Canal Co.*, 40 Utah 371, 121 P. 741, 745, is the case in which this court held that an adverse interest in the event of the specific action is the interest which disqualifies a witness. The pertinent facts are: The administrator was suing a corporation for wrongfully transferring stock belonging to the deceased. H. W. Ramlose, who now claimed and held the stock though not

a party to the suit, offered to testify as to how he became the owner of the stock. In ruling the court said:

"The mere fact that Ramlose was not a party to the action is, under the circumstances, no reason why he was not interested in the event thereof. Under the statute, Ramlose would be incompetent to testify to any fact which was equally within his knowledge and that of the decedent, unless he were called on behalf of the administrator. All of the facts concerning which Ramlose sought to testify were equally within the knowledge of himself and that of the decedent. His testimony was therefore properly excluded."

The mere fact that the matter to which the witness is to testify is equally within the knowledge of the witness and deceased does not disqualify the witness. It must pertain to the transaction with the deceased involved in the lawsuit, or to a statement made by deceased with reference to that transaction, and be equally within the knowledge of both. For a very scholarly discussion of the so-called "dead man" statute giving the term "adverse interest" a wider range of exclusion than that allowed in this opinion, see article written by Mr. Justice Wolfe in 13 Rocky Mountain Law Review, 282 (June, 1941) which also appeared in the Utah Bar Bulletin, Volume 11, July-August, 1941, Nos. 7 and 8.

The law is unqualifiedly expressed if a witness is not a party adverse to the executor, administrator, guardian, heir, legatee or devisee in a suit wherein such executor seeks to protect or recover the estate's assets; and if he has not a direct interest in the event of that suit antagonistic to that of the estate of the deceased, he is not disqualified by the statute. It is the interest in the claim which is adverse—not the adverse testimony that disqualifies him. The witness in this case is not an adverse party in this action, nor is her interest one in the claim adverse to the estate of the deceased. On the contrary, her personal interests are adverse to the claim of the purchaser and if she testifies in his behalf she would be testifying against her personal interests. Her testimony was properly admitted.

This is an action in equity in which it becomes our duty to determine questions of fact as well as questions of law, but unless the evidence clearly preponderates against the findings and judgment by the district court, its decision will stand. *Singleton* v. *Kelly,* 61 Utah 277, 212 P. 63; *Clark* v. *Clark,* supra.

An analysis of the facts as set out in the record convinced us that the evidence not only clearly preponderates against the findings and judgment of the district court but compels a different conclusion. The only evidence to support the finding that the deceased actually signed the receipt in issue was the testimony of Reed Robert Maxfield, the son of the purchaser. He testified that twelve years before, when he was eleven years of age, he saw his grandfather sign the receipt. For reasons that are obvious from the record little credence can be given testimony of this character. The trial court gave considerable weight to the testimony of Robert Burns Maxfield, Sarah Keysor Kemp and Jessie Kemp, in which they testified that the deceased had told them at various times during his life that he had executed a receipt or agreement to the purchasers. We do not consider this evidence decisive for it is noticeable that that witnesses used the words *receipt* and *agreement* interchangeably throughout their testimony. Since the subject matter of the receipt and the agreement are similar it is more than a possibility—it is very probable—that the deceased was referring to the original agreement in the conversations with such witnesses.

It is noteworthy that the receipt, which purports to have been made only four days after the purchase contract, was, according to plaintiffs' witnesses, given inter alia to cover the keep (board and room) of the maker until his death, although the sale contract recites that he was to have his keep in addition to the $5,000 sale price, so if that contention be upheld, plaintiffs would receive credit twice on the sale price for decedent's keep.

Evidence which we consider decisive is the testimony of the children of the deceased and the expert testimony of

J. Percy Goddard. Evan George Evans, son of the deceased, who had full and complete authority of management of all property of Charles Evans in life, and who was his executor after death, testified that the signature on the receipt was not the signature of the deceased. He further testified that no claim was ever made by the respondents of a payment of $3,000 during the life of the deceased; that during the period from August 11, 1933, to December 26, 1943, nothing was ever mentioned about the return of any water stock; that the purchasers never demanded any water stock; that purchasers never tendered to him or returned to him any water stock; that the purchasers never made any complaint concerning tools that were not delivered; that there was no entry of a $3,000 payment in the account book. The executor further testified the purchasers came to him in 1934, or the first part of 1935, and asked that delinquency of the payments be waived and nothing was said about having paid $3,000. The waiver was granted. In considering the genuineness of the signature we think the evidence impels the conclusion that the signature is not that of the deceased. Evan George Evans, Ann Jane Sainsbury, Earl D. Evans and Eldon Stephen Evans, children of the deceased, all testified that the signature on the receipt was not the signature of their father, Charles Evans. With the aid of the testimony of J. Percy Goddard, a handwriting expert of high repute, we are able to easily discover the distinction and differences between known signatures of the deceased and that of the signatures on the receipt. For example, the "C" in Charles of the questioned signature has a greater slant by several degrees than the letter "C" as appears in the proven standard signatures, particularly in relation to the slant of the letter "h" which is the second letter in the signature. This distinction becomes apparent by drawing lines along the slant of the "C" and the "h" until the two lines converge at the top. The lines of all signatures converge but the angle at the converging point of the questioned signature is 9 or 10 degrees *greater* than the converging point of the standard signatures. Throughout the signature it appears that the

hand that wrote "Charles Evans" on the questioned document was more steady, more skilled and more smooth than the hand that wrote the standard signatures. For instance, the letter "l" is smoother than the "l's" appearing in the standard signatures. It should also be noticed that the letter "l" of the questioned signature reaches and slightly passes the letter "C"; in the standard group the "l" is a relative short letter. The marked differences between the three characters "es" and "E" not only reinforce and render certain that the signature on the receipt is not the signature of decedent but also dispose of the purchasers' claim. One can almost see at a glance that the two characters "es" occupy approximately 50% more horizontal space than do the characters of the standard signatures. The letter "E" is different in that we can turn it 45 degrees and we have a very clear letter "O"; there is no such character in the "E" of the standard writings.

The evidence clearly preponderates against the findings of the district court and the judgment must be reversed.

Judgment reversed. Cause remanded with directions to enter judgment for defendants, "no cause of action." Costs to appellant.

PRATT and WADE, JJ., concur.

McDONOUGH, Justice (concurring in result).

I concur in the result on the ground that the evidence, as pointed out in the opinion, clearly preponderates against the findings and judgment below. Since this is true, I express no opinion on the admissibility of the testimony allegedly improperly received.

WOLFE, Justice (concurring specially).

I concur with the result on the ground that the evidence compels us to come to the conclusion that the decedent, Charles Evans, never signed the receipt. That, of course, makes any consideration of the complicated Section 104-

49-2, U. C. A. 1943, unnecessary. Since the majority of the court think it advisable to consider the interesting question as to whether certain witnesses, permitted to testify in this case, were, under that so-called "dead man's statute," disqualified as contended by appellant, I shall take the occasion to say that in the main I agree with the analysis and interpretation of the section as contained in the court's opinion. In an article contributed by me to the June 1941 number of Volume 13 of the Rocky Mountain Law Review, and later republished in the Utah Bar Bulletin, Vol. XI, Nos. 7 and 8, July-August, 1941, from which article counsel on both sides copiously quoted, substantially the same method of analysing and clarifying this difficult piece of statutory law as is pursued in the main opinion was set forth. However, the question raised in this case under Section 104-49-2, U. C. A. 1943, was not considered in the article here cited.

I think it well for the future to make certain observations regarding some statements in the main opinion. I am not prepared to say that

"the confusion vanishes when a careful analysis is made of the intent and purpose of the statute."

At one time during my practice of the law, I took time to examine well over a thousand cases dealing with these so-called "dead man's statutes" from the various states. Many of the differences in construction are resolvable because of differences in wording giving rise to distinct differences in meaning and scope. But when such bases for the differences are all accounted for there still remains confusion due largely to border line cases. And even in our own state of Utah, I suspect there has been some confusion. I refer to the case of *Staats* v. *Staats,* 63 Utah 470, 226 P. 677, cited in the opinion and to which I shall later allude.

But as the main opinion states, I think it is true that when the intent and purpose of the statute is taken into consideration the line between qualification and disqualification of witnesses sought to be drawn by the statute is much more easily ascertained.

I do not think the purpose of the statute is confined to the narrow one of attempting

"to guard against the temptation to give false testimony in regard to a transaction with the deceased person by the surviving party when such transaction is involved in a lawsuit and death has sealed the mouth of the other party."

Certainly its

"sole purpose is [not] to prevent the proving by *false* testimony of claims against the estate of a deceased person." (Italics mine)

It is broader than that. The purpose is better expressed in the statement that the

"statute seeks to put the two parties upon terms of equality in regard to giving evidence of the transaction."

That certainly includes the more refined purpose of guarding against temptation to give false testimony but it also addresses itself to the situation that the living party has an advantage due to the fact that death had removed the one who was at the other end of the transaction and who might be the only one who could rebut the testimony of the survivor or correct, modify or qualify it. Nor at this time would I want to go on record as agreeing that the only matter as to which a witness is disqualified is not as the statute says:

"any matter of fact whatever" "equally within the knowledge of both the witness and such * * * deceased person" but only a *"transaction* with the deceased involved in the lawsuit" (italics mine)

if it is meant to imply that such transaction must have been one between the deceased and the allegedly disqualified witness.

I am inclined to think the disqualification is broader and applies, as was stated in the article above mentioned, to

"All *statements* and transactions [which] are within the disqualification if within the knowledge of both deceased and the surviving

person. As to 'matter of fact whatever' it must be a fact or matter which in some way connects the deceased and the surviving witness. And it would seem that the knowledge must be derived from transactions between the survivor and the decedent." (Italics added)

I am not sure that the extent of disqualification of a witness is only as to a

"transaction with the deceased involved in the lawsuit, or to a statement made by deceased with reference to that transaction"

equally within the knowledge of both. The statute adds "or matter of fact whatever." (I think the word "of" was probably a misprint and that our statute when first passed was intended to read "matter or fact" for such is the wording of the then California statute similar except for the word "of" to Section 3877 of Utah Compiled Laws 1888.) Whether it only goes to such transactions or statements need not in this case be decided.

Particular situations as they come up should be measured along side of the statute and then decided. This statute is one that makes it wise to go no further in any case in laying down its application than is necessary. I think it unnecessary in this case to commit ourselves as to the nature and type of event which must be equally within the knowledge of deceased and surviving tendered witness. I, therefore, reserve that from my concurrence.

As to the other parts of the opinion I am in accord. I think it somewhat helpful to follow the procedure set forth in the article above referred to. The first step is to ascertain if the representative of an estate (whether it be guardian of an insane or incompetent person's estate, or executor or administrator of a deceased person's estate) or one who participated in a decedent's estate (whether as heir, legatee or devisee or as remote or direct grantee or assignee of such heir, legatee or devisee) is party in the civil action, suit or proceeding either as plaintiff or defendant. Having found such to be the case, the next step would be to ascertain whether the tendered witness was a party to the civil

action, suit or proceeding. If not, was he or she directly interested in the event thereof? What is a direct interest in the event thereof is itself sometimes a nice question which need not here detain us. If not a party or directly interested in the event of the suit, is such tendered witness one who stood in the line of succession either before (or perhaps after) one who is a party or directly interested in the event of the suit? That is to say, is the tendered witness one under or through whom a party or person directly interested in the *event of the suit adversely to the protector of the estate* derived his title or interest or any part thereof? If all of these steps are ascertained affirmatively, the tendered witness is disqualified, as to certain matters the type or nature of which I do not think we need in this case discuss; because it is conceded that the matters which the allegedly disqualified witness in this case was permited to testify to, were within the statute as to subject matter if the witness was disqualified measured by the various tests above set out.

The central and starting point of the inquiry being whether one of the class to be protected, i. e. guardian, executor, administrator, heir, legatee, devisee, or assignee or grantee of any of them, is suing or defending, the scheme of the statute is clear. The party who opposes the protector of an estate or who opposes a person who has derived his interest therefrom in the suit whether defending or suing is disqualified as a witness as to facts and matters included in the statute. Likewise disqualified is a person directly interested in the event of the suit and persons from, through or under whom such party to the suit or person directly interested in the event thereof derived (or perhaps transmitted) directly or remotely his title or interest. And why? Essentially because the executor, administrator, guardian, heir, legatee, devisee or their grantees or assigns would be, in the civil action, suit or proceeding, defending the integrity of the estate which they represented or the interest which was derived from such estate against a witness whose evidence would tend to impugn or subtract from or disintegrate the estate. To again borrow from the article referred to:

"A rule of thumb which may not be of universal application but which is at least helpful is as follows: On one side is a person who is seeking to protect the integrity of the estate or to recover assets claimed to belong to it; on the other side is a person who seeks to subtract from the estate or resist recovery of claimed assets. The statute is for the benefit of the first side and operates against the opposing party. Therefore when one stands on the estate, affirms and acknowledges it for the support of his interest or claim whether that interest be derived directly or through heirs or others who took or claimed through the estate he can take advantage of the statute. But he whose claim depends upon subtracting from an estate or on establishing the fact that the property did not belong to or was not derived from the estate is made incompetent by the statute. Where parties all stand on the estate for their rights but the controversy is over their respective shares, as in will contests, the statute does not apply."

Naturally a party to the suit, whether plaintiff or defendant, or one directly interested in the event of the suit (or any person standing in line of succession before [or perhaps after] such party or person as to his interest or title) who was opposing the representative of the estate (or any participant in or from it) would be expected to give testimony against the dead owner of the estate which would tend to subtract or to destroy the integrity of such estate. Thus the implication is that the testimony would be adverse to the protector of the estate although the statute does not directly say so. And because he would be in an advantageous position as regards the one who was attempting to preserve the integrity of the estate respecting matters equally within his knowledge and that of the decedent in regard to which he was put on to testify, he would be disqualified as a witness as to such matters, at least if they were adverse. If he was to testify favorably the protector could call the witness.

Since a controversy within the frame-work of the estate involving participation or sharing therein does not tend to lessen or subtract from it, the statute does not apply to contests between heirs in will contests. But in this regard the case of *Staats* v. *Staats,* supra, is somewhat puzzling. In that case the plaintiff, son of decedent Charles B. Staats,

brought an action against his stepmother who was administratrix c. t. a. of his father's estate, claiming that he, the son, had been a partner in the father's contracting business. The brothers of the plaintiff sided with him against the widow and administratrix. But the action of the son was to subtract from the estate while the administratrix was attempting to preserve the estate, even though her reason for opposing the son and the other heirs who sided with him was that her share of the estate would be greater. This court nevertheless held that:

"This is not an assault upon the estate of the deceased, but is purely a controversy between the children, who, as a matter of course, are heirs of the deceased, and, in this instance, also his devisees, and the defendant, who is the widow of the deceased, and who refuses to abide by the provisions made for her in her husband's will."

Unless the court desired to discipline the widow for taking against her husband's will, it is difficult to see why she should not be considered at least for the purposes of the statute as an heir. It is also not clear how an action by a son claiming that part of the estate belonged to him as a partner is "purely" engaged in a controversy among heirs. The court in that case considered Mrs. Staats not acting as executor but, as the Chief Justice remarks, acting in her own right but even so she was acting as widow within the framework of the estate and the plaintiff son was making an assault upon the estate. It appears that the court was influenced by the fact that it was a contest between all the children on one side and a new second wife who became such late in the father's life. It would indeed have worked a hardship not to permit the son who claimed to be a partner of his father to testify as to transactions on which the partnership was founded and transactions and matters subsequent thereto showing the continuance over many years of that partnership but it is submitted that the opinion may illustrate the adage that hard cases make bad law. It appears to be technically wrong so far as correctly applying Section 104-49-2(3), U. C. A. 1943, is concerned.

In the above, it will be noted, we are dealing with proffered witnesses who were either parties to the suit adverse to the protection of the estate or adverse to participants in the estate or their assignees or grantees or proffered witnesses who were interested in the action adverse to such protection or participants or proffered witnesses who were in line of succession of such parties or interested persons adversing the estate or participants therein.

The statute does not deal with one who has no interest adverse to the estate or adverse to a participant therein or who is not directly interested in an outcome of the suit adverse to the protector or participant or who does not stand in line of succession with such adversely interested parties and therefore who does not oppose the protector or participant in an adverse capacity or interest. Hence, it would seem that if such proffered witness is one who has no interest adverse to the estate even though his testimony would be adverse, he is not barred. And a fortiori if he has an interest in the estate he could be a witness even though his testimony were adverse to the estate, at least as long as he did not at the same time have an interest adverse to the estate like one who is at one and the same time an heir and a creditor. A person who is a participant in the estate, such as an heir, may ordinarily testify adverse to the estate and in favor of the person adversing the estate. Such person was Sarah Keysor Kemp.