360 P.2d 1015

S. W. MORRISON, Jr., Co-Administrator of the Estate of Fannie P. Morrison, deceased, Plaintiff and Appellant,

v.

WALKER BANK & TRUST COMPANY, a corporation, Administrator with the Will Annexed of the Estate of Chauncey P. Overfield, also known as C. P. Overfield, deceased, Defendant and Respondent.

No. 9308.

Supreme Court of Utah.

April 13, 1961.

Quentin L. R. Alston, Salt Lake City, for appellant.

Samuel C. Powell, Ogden, for respondent.

CALLISTER, Justice.

Action by S. W. Morrison, Jr., as Co-Administrator of the Estate of Fannie P. Morrison, deceased, against Walker Bank & Trust Company, Administrator with Will Annexed of the Estate of Chauncey P. Overfield, deceased, to recover certain shares of stock or their value in the event delivery could not be made. From an order of the lower court granting defendant a nonsuit, plaintiff appeals.

S. W. Morrison, Jr. and Ione M. Overfield are brother and sister, being the only children of Fannie P. Morrison, who died intestate on November 27, 1941. They were duly appointed co-administrators of their mother's estate on April 20, 1942.

Ione M. Overfield is the widow of Chauncey P. Overfield who died testate on July 14, 1958. She was named executrix under her husband's will, but waived her right to act as such, and Walker Bank & Trust Company was duly appointed to act as administrator with will annexed. Ione further renounced the provision made to her in Chauncey's will and elected to take in lieu thereof her statutory interest in his real property.

On January 29, 1959, the last day for presentation of claims, the plaintiff presented defendant a creditor's claim for $44,415.-34, consisting of 16,395 shares of stock of Independent Coal & Coke Co. at $1 per share and retained dividends, together with interest thereon in the amount of $28,020.34.

Plaintiff's claim was rejected and this suit was commenced. In his complaint, as

amended, plaintiff alleges that sometime in May, 1941, Fannie P. Morrison borrowed $3,500 from Chauncey and, to secure payment thereof, delivered to him, as trustee either under an express trust or a trust implied by law, 16,136 shares of stock of Independent Coal & Coke Co.; that said stock was to be held by him as such trustee until the loan was repaid with the right to apply the dividends upon said stock towards the payment of the indebtedness; and that Chauncey was obligated to return the stock upon the discharge of the loan.

The amended complaint further alleged that Chauncey received sufficient moneys in dividends to retire the loan but failed to return the stock; that, in violation of the terms of the trust, he fraudulently transferred the stock to his wife and daughters; and that neither Fannie P. Morrison nor the plaintiff knew of the transfer of the stock or of Chauncey's repudiation of the trust until the time of filing the claim.

The defendant denied the foregoing allegations and pleaded as affirmative defenses the pertinent statutes of limitations, laches, and the statute of frauds.

Proof of the alleged transaction between Fannie P. Morrision and Chauncey P. Overfield depended upon proposed testimony by S. W. Morrison, Jr. and Ione M. Overfield. The defendant objected to these parties testifying on the ground that they were barred as witnesses by virtue of our so-called "dead man" statute.[1] The court sustained defendant's objection whereupon the plaintiff made a proffer of proof as to what these witnesses would testify if allowed. Substantially, the proffer was to the following effect:

That S. W. and Ione would testify that the former, acting on behalf of their mother, Fannie P. Morrison, applied to Ione for a loan of $3,500. If granted, Fannie would secure the note by depositing with Ione shares of stock of Independent Coal & Coke Co. Ione advised that she could not make the loan from her own personal funds but would contact her husband, Chauncey. This she did by telephone in the presence of S. W. Chauncey advised Ione that she could

---

1. 78-24-2, U.C.A.1953: "The following persons cannot be witnesses: * * * (3) a party to any civil action, suit or proceeding, and any person directly interested in the event thereof, and any person from, through or under whom such party or interested person derived his interest or title or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues or defends, * * * as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian, assignee or grantee, directly or remotely, of such heir, legatee or devisee, as to any statement by, or transaction with, such deceased, * * * or matter of fact whatever, which must have been equally within the knowledge of both the witness and such * * * deceased person, unless such witness is called to testify thereto by such adverse party so claiming or opposing, suing or defending, in such action, suit or proceeding."

make the loan, whereupon she delivered to S. W. her check for $3,500. The check was drawn upon the Irving Trust Co. of New York on an account that was maintained either jointly by Ione and Chauncey or in her name alone with the funds therein belonging solely to Chauncey from which she could withdraw only with his consent. That upon receipt of the check S. W. delivered to Ione the shares of stock, and she signed a paper or receipt acknowledging the deposit of the stock as security for the loan which was to be repayable on or before a year from the date thereof. That the paper or receipt contained no provision for interest and no power of sale or other mode of foreclosure of the security. The paper or receipt was given to S. W. who retained it in his possession for some time, but that it is now lost and unavailable. That shortly after Fannie's death, S. W., Ione and Chauncey met together at which time a discussion was had pertaining to Fannie's property and S. W. mentioned the stock which had been pledged with Ione. That upon numerous occasions, after they had been appointed co-administrators of their mother's estate, S. W. inquired of his sister regarding the matter of the stock and, on each occasion, she assured him that it would be taken care of. That at no time did Chauncey ever indicate that he had repudiated the trust or claimed the stock and that S. W. did not know that Chauncey had caused the stock to be transferred to his wife and daughters.

Following this proffer, plaintiff rested his case and defendant moved for a nonsuit which was granted on the grounds that there was not sufficient evidence to substantiate the plaintiff's cause of action.

Plaintiff appeals solely upon the issue that the lower court erred in ruling that S. W. Morrison, Jr. and Ione M. Overfield could not testify. His argument is that both witnesses were agents and thus not disqualified under the wording of 78-24-2(3), U.C.A.1953.

The problem presented is rather unique. Both S. W. and Ione, being the sole surviving heirs of their mother, are persons "directly interested in the event" of this action and their interest is adverse to Chauncey's estate in that the claim (to which they have equal share) depends upon subtracting from the estate or on establishing the fact that the stock did not belong to the estate.[2] Thus, they are both disqualified to testify on behalf of plaintiff against the representative of the decedent, Chauncey, unless the fact of agency places them outside the scope of the statute. This statute limits the introduction of testimony which might be of value in determining the ultimate truth and, therefore,

2. See: James H. Wolfe, Competency of Witnesses in Utah, 13 Rocky Mtn.L.R. 282, Vol. XI, Utah Bar Bulletin, Nos. 7 & 8, 65, 68.

should be narrowly construed.[3] It does not specifically disqualify agents and we are in agreement with the authorities cited by plaintiff that there seems to be nothing in the statute which would prevent the agent of a surviving party from testifying to transactions with the deceased.[4] However, this general statement might not apply where the agent is also a party or a person having a direct adverse interest in the estate of the deceased. In other words, a person otherwise incompetent to testify under the "dead man" statute cannot be rendered competent by the fact that he was the agent of the surviving party.

▉ With the foregoing in mind, it must be held that S. W. is disqualified to testify as to any statement by or transaction with Chauncey which was equally within the knowledge of both. The fact that he was acting as agent for his mother does not alter this. However, his testimony relating to the conversations and transactions with his sister, Ione, would not fall within the statute, and he would be a competent witness in this regard. The "dead man" statute, strictly construed, does not prohibit a party or an interested person from testifying to statements of or transactions with an agent of a decedent. True, Ione is in an unusual position because of her direct and adverse interest, but this would only bear upon the credibility of the testimony. While ordinarily the knowledge of an agent is imputed to his principal, it would not follow that the facts would be equally within the knowledge of the witness and the deceased as required by the statute.

▉ As to the competency of Ione to testify: The "dead man" statute would certainly not disqualify her as a witness to the dealings with her brother. However, because of her interest in the action, she is incompetent to testify to any statements of or transactions with Chauncey material to the issues of this suit. The contention, if true, that she acted as Chauncey's agent would not remove the disqualification.

▉ Thus, while the lower court could have permitted S. W. and Ione to testify as to these transactions and statements between themselves, he was correct in ruling that they were incompetent to testify as to their transactions with Chauncey. Under the circumstances related in the proffer of proof, the pivotal issue of whether the loan was made by Chauncey, through the agency of Ione, could only be established by the testimony of Ione and S. W. as to the statements of and transactions with the deceased. As to this they are disqualified by the provisions of the "dead man" statute,

3. Sine v. Harper, 118 Utah 415, 222 P. 2d 571.

4. Op. cit., note 2; 21 A.L.R. 928; Cush v. Allen, 56 App.D.C. 327, 13 F.2d 299, 54 A.L.R. 264.

and therefore the motion for nonsuit was properly granted.

In view of the foregoing, it is not necessary to discuss the other defenses raised by the defendant, except to state that they have merit, particularly the defense of laches.

Affirmed. Costs to defendant (respondent).

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.