Frank CARNESECCA and Mary Carnesecca, his wife, and Joseph Carnesecca, Jr., and Janet Carnesecca, his wife, Plaintiffs and Respondents,

v.

Bernice D. CARNESECCA and the Land Title Company, Defendants and Appellants.

No. 15051.

Supreme Court of Utah.

Dec. 6, 1977.

Jackson Howard, Robert C. Fillerup, Provo, for defendant and appellant.

Thomas T. Billings, Keith E. Taylor, Salt Lake City, for plaintiffs and respondents.

HALL, Justice:

This appeal concerns a dispute as to the ownership of family property consisting of approximately 18 acres of land and a well thereon, situate in Utah County.

The plaintiffs, Frank and Joseph Carnesecca are the sons of Joseph Carnesecca, Sr., deceased, the remaining plaintiffs being their respective wives. Hereafter, all of said plaintiffs shall be referred to collectively as "Frank and Joe."

The defendant, Bernice D. Carnesecca, hereinafter referred to as "Bernice," is the surviving wife of Egidio Carnesecca, deceased, hereinafter referred to as "Jim," who also was a son of Joseph Carnesecca, Sr., hereinafter referred to as "father."

The father acquired the initial acreage which he operated as a farm with the primary assistance of Jim and Joe. In 1942, while Joe was away in the Navy, Jim and Frank purchased for $900 the 18 acres in question and took title in their own names.

At the end of the 1950 harvest there was a family gathering. Supposedly, all parties here were present, although Bernice denies being there. Nevertheless, at that meeting, father required Jim and Frank to permit Joe to purchase a one-third interest in the 18 acres for the sum of $1,200. However, title remained in the names of Frank and Jim.

In 1955 Jim and Joe determined a well was necessary to irrigate some 53 acres of the farm acquired by deed and inheritance from their father and the well was sunk, out of proceeds from the farm, on the 18

acres since it was the most advantageous site.

Jim died in 1966 and Bernice inherited all of his property including one half of the 18 acres and one half of the remainder of the farm which she continued to operate with Joe until 1973 when they had a dispute. Thereafter the farm, excepting the 18 acres, was sold and the proceeds divided one half to each, Frank making no claim thereto.

In 1975 a meeting was held at Bernice's home at her instance and request since she had received an offer to purchase the 18 acres. All parties were present, including the potential purchaser, Christensen, who presented documents of sale reflecting the record title of the well and land. It was ultimately agreed, however, that the sale must necessarily reflect a one-third ownership of land and water in Frank, Joe and Bernice. The sale documents were modified accordingly and were subsequently executed, binding them irrevocably to the sale, but at the time for closing Bernice refused to sign, asserting a claim to one half of the net proceeds of sale. By stipulation, the sale proceeds are still being held in escrow pending the disposition of this appeal.

The defendant Land Title Company was dismissed from the suit at pre-trial and the only issue tried below was the respective interests of the parties in the 18 acres and the well. The trial court declared Joe was the purchaser of a one-third interest in the land in 1950 and that thereafter Bernice and Frank held in trust for him. The court also declared Frank to be a one-third owner in the well and that Joe and Bernice held the same in trust for him. The court further found that Bernice was estopped by her own conduct from asserting more than a one-third interest in the land and well.

Bernice makes three claims of error, 1) the 1950 agreement was not admissible in evidence by virtue of the provisions of the Deadman Statute, Statute of Frauds and Statute of Limitations, 2) the evidence did not support a finding of constructive trust, and 3) the evidence did not support a finding of estoppel.

Frank and Joe contend the appeal merely reflects a dissatisfaction with the facts as found by the trial court.

■ The long established rules of appellate review require this court to defer to the findings of the fact finder rather than substitute our judgment therefor, and such holds true unless it can be determined as a matter of law that no one could reasonably find as did the fact finder.[1]

■ The rules also require us to view the evidence, including the fair inferences to be drawn therefrom, and all of the circumstances shown thereby, in the light most favorable to the successful party below.[2]

■ Equity will impress a constructive trust upon property in favor of a beneficiary of an oral trust under certain circumstances and no writing evidencing an intention to create a trust is required. Such is an equitable remedy arising by operation of law to prevent unjust enrichment and is not within the statute of frauds.[3] The fact that parol evidence is admitted[4] to prove its existence necessarily requires a showing by clear and convincing evidence.[5]

■ The usual circumstances which give rise to a constructive trust would involve one unjustly profiting through fraud or the violation of a duty imposed under a fiduciary or confidential relationship.[6]

The record is replete with evidence that the farm was a family oriented operation from its beginning. Its considerable suc-

1. *Hanover Limited v. Fields*, Utah, 568 P.2d 751 (1977).

2. Id.

3. *Haws v. Jensen*, 116 Utah 212, 209 P.2d 299 (1949).

4. *Corey v. Roberts*, 82 Utah 445, 25 P.2d 940 (1933).

5. *Nielson v. Rasmussen*, Utah, 558 P.2d 511 (1976).

6. *Hawkins v. Perry*, 123 Utah 16, 253 P.2d 372 (1953).

cess obviously resulted from the combined industry of the whole family which chose to operate in the nature of a partnership. Their relationship was one of trust, each relying upon the good faith of the other, usually without the benefit of written understandings. Father kept an abbreviated account of the farm business which reflected annual profits and the division thereof. There is a $1,200 entry in 1950 which is supportive of the oral contract for Joe's purchase of a one-third interest in the 18 acres. The over-all conduct of Jim and Frank in the years following the purchase is indicative of their recognition of Joe's joint ownership.

All of such evidence, coupled with the testimony of Frank, Joe and their wives, is of the clear and convincing nature as has been previously recognized by this court.[7]

■ The effectiveness of Bernice's statute of frauds argument is dispelled by the fact Joe has been in possession of the land, redeemed it from tax sale, expended considerable sums to improve it, (planting, installing heating and irrigation systems and placing a well thereon) all of which is substantial evidence of a fully executed oral contract of purchase.[8] Also, trusts arising by implication or operation of law are expressly excluded from the effects of the statute.[9]

■ Similarly, the statute of limitations argument espoused by Bernice has no application since there was no repudiation of contract nor hostile assertion by Jim (and thereafter by Bernice), and it was not until 1975 that she took a position contrary to Joe's interest.[10]

■ In regard to the contention that the dead man statute [11] bars testimony relating to the 1950 contract of purchase, its application must be viewed in light of the legislative purpose for its enactment. Its purpose was not to suppress truth but to prevent the proof of claims against an estate of a deceased person by false testimony.[12]

■ The statute, in limiting the introduction of testimony bearing upon ultimate truth, must be narrowly construed [13] and applied strictly according to its terms.[14] Its intent was to disqualify only those witnesses who have a direct interest adverse to the interests of a deceased person and his estate and it has no application to those witnesses who have a mere interest in the estate when the controversy between them is only as to their respective rights as heirs.[15]

■ In the instant case there were four witnesses to the transaction, and in addition, the trial court found Bernice herself was present. That, together with the other evidence corroborates the trust agreement. Consequently, even if some of the evidence may have been inadmissible there is substantial evidence to sustain the determination of the trial court that a constructive trust existed.[16]

Turning now to the matter of estoppel, the evidence is that Frank and Joe would not have agreed to the Christensen sale except for the agreement reached in 1975

7. *Barrett v. Vickers*, 100 Utah 534, 116 P.2d 772 (1941).

8. *Randall v. Tracy Collins Trust Co.*, 6 Utah 2d 18, 305 P.2d 480 (1956), citing various cases establishing the Utah doctrine of part performance.

9. U.C.A.1953, 25–5–2.

10. *In re Madsen's Estate*, 123 Utah 327, 259 P.2d 595 (1953).

11. U.C.A.1953, 78–24–2(3).

12. *Maxfield v. Sainsbury*, 110 Utah 280, 172 P.2d 122 (1946).

13. *Morrison v. Walker Bank & Trust Co.*, 11 Utah 2d 416, 360 P.2d 1015 (1961).

14. *Timpanogos Highlands, Inc. v. Harper*, Utah, 544 P.2d 481 (1975).

15. *Staats v. Staats*, 63 Utah 470, 226 P. 677 (1924).

16. *In re Estate of Sharp*, Utah, 537 P.2d 1034 (1975), citing *Cook v. Gardner*, 14 Utah 2d 193, 381 P.2d 78 (1963) and also citing *Del Porto v. Nicolo*, 27 Utah 2d 286, 495 P.2d 811 (1972) as to the effect of inadmissible testimony because of dead man statute.

with Bernice. That agreement was only reached after all of the sale documents were modified to reflect a one-third interest in Joe and to permit his one-third participation in the proceeds of the sale. The actual conveyance also was modified to reflect he and his wife as grantors. In reliance upon Bernice's conduct all parties bound themselves to sell and thus gave up a substantial legal right. It was not until some three weeks later that Bernice opposed the equal, one-third division of the sale proceeds, and such was the first challenge or repudiation of Joe's interest.

These facts clearly meet the test of equitable estoppel set forth in *Koch, Inc. v. J. C. Penney Co.*[17] which is: conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct.

Judgment affirmed. Costs to respondents.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

17. Utah, 534 P.2d 903 (1975).