In the Matter of the ESTATE OF
William L. ORRIS, Deceased.

No. 16280.

Supreme Court of Utah.

Nov. 24, 1980.

Allen H. Tibbals and Michael Z. Hayes of Tibbal & Hayes, Salt Lake City, for appellant Bradley L. Hasper.

James P. Cowley of Watkiss & Campbell, Salt Lake City, for respondent H. Wayne Wadsworth.

WILKINS, Justice:

This is an appeal from a judgment of the District Court, Summit County, allowing the claim of Respondent H. Wayne Wadsworth, a member of the Utah State Bar, against the Estate of William L. Orris, of which Bradley Hasper is the executor and appellant.

William L. Orris, a medical doctor, moved to Utah in 1961, and became acquainted with respondent about that time. Respondent and Dr. Orris subsequently agreed to exchange professional services, and did so until Dr. Orris left the State in March, 1968, moving first to Arizona, and then to California. Although Dr. Orris no longer provided medical services to respondent, respondent continued to perform legal services relating to the property and business that Dr. Orris had in Utah. Dr. Orris was never billed for these services, and made no payment for them at the time the services were rendered.

On September 20, 1974, respondent submitted to Dr. Orris a draft of a will which Dr. Orris executed on October 17, 1974, and delivered back to respondent. This will appointed respondent as executor, made a specific bequest to him of the testator's interest in certain BLM lands near Park City, and further provided:

IV. Of the rest, residue and remainder of my estate, whether real, personal or mixed, tangible or intangible, wheresoever situated, I devise and bequeath one-half thereof to my friend, H. Wayne Wadsworth of Salt Lake City, Utah in consideration for his friendship and personal services to me over the past several years, and in the event he should predecease me, to his estate; and the remaining one-half thereof, I devise and bequeath to the Tulane University Medical School.

In January, 1976, Dr. Orris became acquainted with Bradley Hasper, the appellant, who moved into Dr. Orris' home near the end of May, 1976. Subsequently, Dr. Orris executed two new wills. The first, an holographic will dated June 11, 1976, left Dr. Orris' entire estate to the appellant, but also provided: "Of my monies, I charge Bradley Hasper to pay to my attorney, H. Wayne Wadsworth of Salt Lake City, Utah, any appropriate amount, not to exceed $10,-000, for legal services he has rendered me." On September 15, 1976, Dr. Orris executed a new formal will, leaving his entire estate to the appellant, and omitting any reference to the respondent (who was not then informed that these wills had been executed).

Dr. Orris committed suicide February 20, 1977, in California. The will dated September 15, 1976, was admitted to probate in California on April 15, 1977, and appellant Hasper was appointed executor. Respondent filed a petition for probate of the 1974 will in the District Court of Summit County, but after appellant filed an objection to probate, the petition for probate of that will was dismissed on stipulation of counsel for the parties. On petition by appellant, the District Court later entered an order allowing ancillary probate of the will dated September 15, 1976, and appointing Hasper as personal representative. Respondent duly filed a claim with appellant, asserting that the 1974 will constituted an irrevocable contract under which he had a right to one-half of the estate. Appellant denied the claim, whereupon respondent filed a petition for allowance of the claim in the District Court, asking specific enforcement of the claimed contract. The District Court, after a trial, found that paragraph IV of the 1974 will, *ante*, constituted a

binding, irrevocable contract and allowed respondent's claim, ordering specific performance of the contract by requiring conveyance of one-half of the estate to respondent.

Appellant claims there was no contract, but that if there were a contract, specific performance was not the proper remedy. Further, he claims any contract was voidable and Dr. Orris voided it, and finally that certain evidence of respondent, including appellant's deposition, was inadmissible as barred by the Utah Dead Man's Statute, Utah Code Ann. 78–24–2, 1953, as amended. We discuss only the matter of contract as that issue is dispositive.

■ It is well settled that a will may contain a contract, and thus one document may serve in a dual capacity.[1] Although a will is revocable, a contract within the will is irrevocable, and such a contract can be enforced even though the will containing it is revoked or not enforceable as a will.[2]

The problem in determining whether paragraph IV of the will in question is a contract must be resolved in the same way as making that determination about any putative contract. Thus:

[t]he inquiry is limited to evidence of the expressed intention of the parties by words or acts, or both, as it is only from the words and conduct of the parties that a court can form any conclusion as to their intention.[3]

This general rule is somewhat modified in this case because the Deadman's Statute[4] forbids the admission of any extrinsic evidence by respondent for the purpose of showing the intent of the parties. We thus are limited to consideration of the language of paragraph IV itself.

■ The language of paragraph IV is at best ambiguous. It contains both testamentary language—"Of the rest, residue and remainder . . . I devise and bequeath . . ."—and, arguably, contractual language—". . . in consideration for . . .". In the face of such ambiguity extrinsic evidence of the parties' intent would normally be allowed. But as pointed out, *ante*, no such evidence is admissible here.

In other cases of this type, the fact that a later will was made on different terms from the claimed contract has been held to constitute evidence that there was no meeting of the minds and no contract.[5] Without other evidence of contractual intent, this inconsistency has been enough to defeat a claim of contract. Such inconsistency exists here, since Orris made two wills after the 1974 will which were inconsistent with the terms of the earlier will.

■ The terms of an alleged contract in a will have to be so precise that neither party could reasonably misunderstand them.[6] The will drafted by the respondent fails to meet this criterion, and we cannot say that there was an enforceable contract embodied in paragraph IV of the 1974 will.

■ Further militating against a finding that the language in question is contractual rather than purely testamentary is the rule that the language of an ambiguous instrument should be construed most strictly against the party who drafted the instrument.[7] Where the draftsman is an attor-

1. *Ward v. Ward*, 96 Utah 263, 85 P.2d 635 (1938); *Van Houten v. Whitaker*, 169 Cal. App.2d 510, 337 P.2d 900 (1959); Cf. *Merrill v. Boal*, 47 R.I. 274, 132 A. 721, 45 A.L.R. 830 (1926).

2. *Ellis v. Wadleigh*, 27 Wash.2d 941, 182 P.2d 49 (1947); *Potter v. Bland*, 136 Cal.App.2d 125, 288 P.2d 569 (1955).

3. *Allen v. Bissinger & Co.*, 62 Utah 226, 231, 219 P. 539, 541, 31 A.L.R. 376 (1923). See, also, *Oberhansly v. Earle*, Utah, 572 P.2d 1384 (1977); 17 Am.Jur.2d, Contracts, § 19.

4. Section 78–24–2, Utah Code Annotated, 1953, as amended.

5. *Clark v. Clark*, 74 Utah 290, 279 P. 502 (1929); *Widman v. Maurer*, 19 Wash.2d 28, 141 P.2d 135 (1943).

6. *Ellis v. Wadleigh*, supra.

7. See, e. g., *Wagstaff v. Remco, Inc.*, Utah, 540 P.2d 931 (1975); *Seal v. Tayco, Inc.*, 16 Utah 2d 323, 400 P.2d 503 (1965); *Huber & Rowland Construction Co. v. City of South Salt Lake*, 7 Utah 2d 273, 323 P.2d 258 (1958).

ney, as well as a party strict construction against that party is particularly apt.[8]

Even assuming, arguendo, that paragraph IV is contractual rather than testamentary, we believe there is no consideration to support a contract. Respondent contends that the services he performed for Dr. Orris between 1968 and 1974 give rise to a past obligation still enforceable at the time the will was signed, and that such obligation provides consideration for the express "promise" found in paragraph IV. The record does not support this view.

Respondent reasons that his conduct and that of Dr. Orris shows that there was a contract between them which was implied in fact. Respondent points out that he and Dr. Orris exchanged professional services from 1963 through 1968 and characterizes such services as "gratis." However, it is in connection with the legal services rendered by respondent for Dr. Orris after the latter left Utah that respondent seeks to establish an implied contract.[9]

■ To make out an implied in fact contract what must be shown is "mutual intent ... manifested by particular acts and attendant circumstances."[10] We are not convinced that such acts and circumstances appear in the record to show the formation of an implied contract. Friendship and mutual support appear to be the hallmarks of the relationship between Dr. Orris and respondent, even after Dr. Orris left the state. Indeed "friendship" is mentioned in paragraph IV of the will in question as a basis for a bequest of one-half of Dr. Orris' estate.

Reversed. Costs to the estate.

HALL, J., concurs.

STEWART, J., concurs in the result.

CROCKETT, Chief Justice (dissenting):

The essential factual picture is sufficiently set forth in the main opinion; and the same is true of certain applicable principles of law. With appropriate deference to any contrary view, it is my judgment that a correct application of those principles to the facts requires the affirmation of the findings and judgment of the trial court.

It is important to realize that if we look through the forms and nomenclature, this case is seen to be a contest as to whether Bradley L. Hasper will get the entire estate by reason of the 1976 will or H. Wayne Wadsworth will get one-half of the estate by reason of an executed contract, as recited in the 1974 will.

It also should be kept firmly in mind that it was the trial court's prerogative to find the facts on the basis of the evidence and reasonable inferences to be drawn therefrom; and that on appeal, it is this Court's duty to respect that prerogative, and to assume that he believed those aspects of the evidence and that he drew the inferences therefrom which support his findings and judgment.[1]

The main opinion correctly states that: "It is well settled that a will may contain a contract, and thus one document may serve in a dual capacity. Although a will is revocable, a contract within the will is irrevocable, and such contract can be enforced even though the will containing it is revoked . . ."

I have no disagreement with the proposition that the terms of the contract should be so clear that neither party could misunderstand them.[2] The statement of the utmost significance in this case is that quoted from paragraph IV of the will that:

"I devise and bequeath one-half [of my estate] *in consideration of* his friendship

---

**8.** See *Continental Bank and Trust Co. v. Bybee,* 6 Utah 2d 98, 306 P.2d 773 (1957).

**9.** If there were an enforceable obligation based on an implied in fact contract, there would be no need for respondent to rely on a subsequent express contract covering the same services. See, 1A Corbin on Contracts 354 (1963).

**10.** *Gleason v. Salt Lake City,* 94 Utah 1, 5, 74 P.2d 1225, 1227 (1937).

**1.** *Carnesecca v. Carnesecca,* Utah, 572 P.2d 708 (1977).

**2.** See footnote 2, main opinion.

and *personal service to me* over the past several years."

This, as I see it, is a simple, clear and definite statement in which I perceive neither uncertainty nor ambiguity. Therefore, it fully meets the above-stated requirement.

Though I see no ambiguity, if it be assumed that there is one, the trial court could properly consider other facts and circumstances. In doing so, he could see, and appears to have seen, the situation as supporting his conclusion that there was an executed contract.

A significant fact (as recited in the main opinion) is that for six years after Dr. Orris left Utah, Mr. Wadsworth had continued to perform legal services relating to the property and business Dr. Orris had in Utah. From the recital in paragraph IV above quoted, and from the fact that in the will dated June 11, 1976, Dr. Orris recited, in his own handwriting, that Mr. Wadsworth should be paid "an appropriate amount, not to exceed $10,000 for legal services he has rendered me," it is shown without question that there existed an obligation, which Dr. Orris recognized, to pay Mr. Wadsworth a substantial amount of money.

In awareness of this obligation on the part of both men, Mr. Wadsworth prepared the 1974 will, which contained what was in effect a plan by which Mr. Wadsworth offered to settle accounts between them. At that time, Mr. Wadsworth had no way of knowing that Dr. Orris would meet an early and unfortunate death. Instead of requiring payment then, he indicated a willingness to abide two uncertainties: that of how long Dr. Orris would live, and whether he would have any estate at all when he died. The proposed will contained the plain and unequivocal commitment that upon the ultimate eventuality of his death, one-half of whatever estate he should then possess was promised to be paid to Mr. Wadsworth.

The will was sent to Dr. Orris in California. He was an intelligent, well-educated man who had practiced his profession for many years. He had plenty of time, and it appears that he took plenty of time, to deliberate upon the execution of the will. After 27 days, he arranged for its formal execution in the presence of others and returned it to Utah.

In his attempt to overturn the judgment, Mr. Hasper advances arguments as to certain legal propositions which he urges should upset the trial court's findings. The first is that the court considered evidence which it should not have done because of the so-called "dead man's statute." [3] It provides that the following persons are disqualified from testifying:

A party to any civil action . . . when the adverse party defends as the executor of any deceased person . . . as to any statement by or transaction with such deceased . . . person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such . . . deceased person . . . .

Since the statute is one which provides for the exclusion of evidence which otherwise may be helpful in ascertaining the truth, it should be construed and applied strictly.[4]

The introduction of the deposition of Mr. Hasper was in no way prohibited by that statute. He is not asserting a claim in which he is adversary to the estate. On the contrary, as the executor, his interest is identified with the estate and he is defending the estate against the claim of Wadsworth.[5]

---

3. Sec. 78–24–2, U.C.A.1953.

4. *Maxfield, et al. v. Sainsbury, et al.*, 110 Utah 280, 172 P.2d 122 (1946); *Morrison v. Walker Bank & Trust Co.*, 11 Utah 2d 416, 360 P.2d 1015 (1961).

5. In our case of *Maxfield v. Sainsbury*, supra, note 5, it was pointed out that the statute did not disqualify as a witness a party to the suit whose interest is favorable to and identical with that of the estate itself. Therefore, it follows that the executor himself would not be disqualified. The Court further stated that the Legislature intended by the term "adverse party" to disqualify only those witnesses who have a direct interest in the success of that particular claim adverse to the interest of the estate. See also, *Carnesecca v. Carnesecca*, supra, note 1.

Appellant also contends that there was error in regard to the application of that statute to the testimony of Mr. Wadsworth. His counsel readily admitted and stated to the court that Mr. Wadsworth could not testify as to any conversations with or transactions with Dr. Orris and his testimony was carefully so limited. He testified only to the fact that he had done work in the absence of Dr. Orris. In fact, in appellant's own reply brief, he states that "the subject matter of those conversations was not given, as both appellant and respondent conceded that to do so would be a clear violation of the dead man's statute."

However, under the strict construction of the "dead man's statute," a "transaction" between the claimant and the deceased does not preclude a description of "services" rendered for the deceased, e. g., for nursing, medical, hospital, or even for other services, such as a plumber or a carpenter, simply describing the actual services that had been rendered. The sound view, which finds support in the adjudications under such statutes, is that they do not preclude the testimony of a claimant for services rendered in the absence of the deceased and without his immediate and personal participation. This is so because the deceased, if living, could not contradict the fact that the claimant rendered such services.[6]

The record discloses that the trial court carefully and correctly protected the interests of the estate and of the parties in his rulings on evidence. Moreover, it is further to be observed that, whatever else may be said about the evidence, there was no prejudice to the estate or to Mr. Hasper. This because the controlling issue in dispute is as to the validity of the contractual obligation to Mr. Wadsworth. The facts essential to its validity are clearly and incontestably shown by facts solemnly attested by Dr.

Orris in his will by acknowledging his debt to Wadsworth and his commitment as to its payment.

The question as to possible undue influence upon Dr. Orris by Mr. Wadsworth because of the attorney-client relationship deserves some attention.[7] The justification for such a presumption arises from the commonly known natural propensity of persons to act in their own interest. However, the fact should not be lost sight of that its real purpose is to assist in arriving at a rational and just conclusion. As with most rules, it is a good servant, but a poor master. Wherefore, it should not be indulged with any such rigidity as to thwart that purpose. Accordingly, such a presumption is rebuttable; and whatever persuasive force it has is to be weighed with all of the attendant facts and circumstances.

In this instance, there are various facts which may well have been persuasive to the trial court. An important one is the fact that at the time the 1974 will was executed, Dr. Orris had long since moved to California, so the parties were not together and there was no opportunity for Mr. Wadsworth to exercise any degree of duress or undue influence upon Dr. Orris. He was completely free to accept or reject the proposition contained in that will and chose to accept it.

The trial court correctly took the view that once it was established that Dr. Orris had made the agreement contained in the 1974 will, and thus become bound by it, any unilateral actions by him thereafter, for whatever purpose and by whatever persuasion, could not disavow nor avoid that commitment.[8]

If the determinations made by the trial court are accorded the presumptions of ver-

6. *Stayton v. Stayton* 148 Kan. 172, 81 P.2d 1 (1938); *Boettcher v. Busse*, 45 Wash.2d 333, 277 P.2d 368 (1954); *King v. Clodfelter*, 10 Wash.App. 514, 518 P.2d 206 (1974); *In re Mueller's Estate*, 166 Neb. 376, 89 N.W.2d 137 (1958); *Burns v. Caughman*, 255 S.C. 199, 178 S.E.2d 151 (1970); *Jackson v. Cont. Bank & Trust Co.*, 443 F.2d 1344 (10th Cir. 1971).

7. See *In re Swan's Estate*, 4 Utah 2d 277, 293 P.2d 682 (1956).

8. *Malstrom v. Consolidated Theatres*, 4 Utah 2d 181, 290 P.2d 689 (1955).

ity to which they are entitled,[9] there is a fair and reasonable basis in the record to support the findings and judgment. I would affirm.

MAUGHAN, J., concurs in the dissent of CROCKETT, C. J.

9. *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176 (1961).